NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEDAL ELFAR<br><br>Plaintiff,<br><br>v.<br><br>TOWNSHIP OF HOLMDEL, MATTHEW MENOSKY, MICHAEL SASSO, and JOHN MIODUSZEWSKI,<br><br>Defendants. | Civil Action No. 22-5367 (RK) (JBD)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Plaintiff's Motion for Partial Summary Judgment against Defendant Township of Holmdel on collateral estoppel grounds. (ECF No. 32.) Plaintiff filed the instant motion and moving brief on January 6, 2023, Defendant filed its opposition on February 8, 2023 (ECF No. 37), and Plaintiff replied on March 1, 2023 (ECF No. 42). The Court has carefully considered the record and parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

**I.    BACKGROUND** [1]

On July 4, 2016 at approximately 2:54 a.m., Plaintiff's vehicle was lawfully stopped in Holmdel, New Jersey by two Holmdel police officers, individual Defendants Matthew Menosky

---

[1] The facts in this Opinion are taken from the record, including the following sources: (1) Plaintiff's Statement of Material Facts ("Pl.'s SMF") (ECF No. 32-2); (2) Defendant's Response to Plaintiff's Statement of Material Facts ("Def.'s SMF") (ECF No. 37); (3) *De novo* appeal August 3, 2022 Decision of Hon. Lisa Thornton of the Superior Court of New Jersey ("*De Novo* Decision"), included as an exhibit to Defendant's brief (ECF No. 37-2); (4) Transcript of Municipal Court Proceeding from February 13, 2017

and Michael Sasso. (Pl.'s SMF ¶ 3; Def.'s SMF ¶ 3.) Over the course of the approximately 20-minute encounter that followed, the officers asked Plaintiff several questions (Pl.'s SMF ¶ 4; Def.'s SMF ¶ 4), peered through Plaintiff's car windows (Pl.'s SMF ¶ 6; Def.'s SMF ¶ 6), had Plaintiff perform field sobriety tests (Pl.'s SMF ¶¶ 14–17; Def.'s SMF ¶¶ 14–17), and searched Plaintiff's vehicle (Pl.'s SMF ¶ 13; Def.'s SMF ¶ 13). The search produced two pill bottles containing marijuana as well as a pipe with marijuana residue. (Pl.'s SMF ¶¶ 7–10, 13; Def.'s SMF ¶ 12.) Except for a 14-second period when the microphone was muted, the officers' entire interaction with Plaintiff was recorded on the police vehicle's dashboard video and audio recording system ("MVR"). (Pl.'s SMF ¶ 30; Def.'s SMF ¶ 30.) Plaintiff was arrested and charged with state law violations related to driving while impaired. (*De Novo* Decision at 1; First Am. Compl. ("FAC") ¶ 19, ECF No. 1.)

Plaintiff was convicted twice in separate Holmdel municipal court proceedings and then acquitted on *de novo* appeal to the New Jersey Superior Court, Law Division. At each of the two municipal court proceedings, the State was represented by a Holmdel municipal prosecutor. (2017 Mun. Ct. Tr., ECF No. 37–2 at 29; 2018 Mun. Ct. Tr., ECF No. 37-3 at 4.) At the *de novo* appeal, the State was represented by the Monmouth County Prosecutor's Office. (*De Novo* Decision at 1.)

At Plaintiff's February 13, 2017 municipal court proceeding, the Honorable Mary Casey, J.M.C. heard live testimony from Officers Sasso and Menosky. (2017 Mun. Ct. Tr., ECF No. 37-2 at 29–37.) At the suppression hearing portion of the proceeding, Plaintiff argued that no probable cause supported the officers' warrantless search of his vehicle that produced the marijuana. Citing the officers' testimony that they smelled marijuana upon approaching and that Plaintiff appeared

---

("2017 Mun. Ct. Tr."), included as an exhibit to Defendant's brief (ECF No. 37-2); and (5) Transcript of Municipal Court Proceedings held on December 7 and 14, 2018 ("2018 Mun. Ct. Tr."), included as an exhibit to Defendant's brief (ECF No. 37-3). Pincites to the preceding transcripts reference the page number of the party's filed exhibit, not the page number of the transcript itself.

intoxicated in their interactions, Judge Casey found the State had met its burden to establish an exception to the warrant requirement. (*Id.* at 37.)

At the conclusion of the trial, Judge Casey found Plaintiff guilty of four state violations: driving while intoxicated (N.J.S.A. 39:4-50); operating a motor vehicle in possession of a controlled dangerous substance (N.J.S.A. 39:4-49.1); driving in excess of the speed limit (N.J.S.A. 39:4-98.10); and possessing less than 50 grams of marijuana (N.J.S.A. 2C:35-10a(4)). (*Id.* at 38–48; Def.'s SMF ¶ 2; *De Novo* Decision at 2.) Plaintiff filed a motion for a new trial based on newly discovered evidence, which was granted. (*De Novo* Decision at 2.)

Plaintiff's second municipal court trial was conducted before the Honorable Thomas Smith, J.M.C. approximately twenty-two (22) months after the first trial. During the evidentiary phase, Judge Smith heard testimony from both officers on the limited subject of why the MVR microphone had been disabled for 14 seconds. (2018 Mun. Ct. Tr., ECF No. 37-3 at 32–41.) Plaintiff argued that disabling the microphone violated department policy and that whatever the officers said to each other during those 14 seconds would undercut the prosecution's probable cause arguments. Notwithstanding Plaintiff's argument, Judge Smith found that muting the microphone was proper during Plaintiff's stop. (*Id.* at 15.) Relying on the newly taken testimony and the transcripts from the previous trial, Judge Smith again found Plaintiff guilty on identical charges. (*De Novo* Decision at 2.)

Plaintiff appealed and was granted a trial *de novo* in New Jersey Superior Court pursuant to N.J. Ct. R. 3:23 *et seq.* (*Id.* at 2.) On *de novo* appeal, New Jersey Superior Court Judge Lisa P. Thornton, A.J.S.C., reviewed the transcripts and record from the proceedings below and issued a written decision with factual and legal findings. Although Judge Thornton did not see or hear any live testimony, she nonetheless found the officers not credible. Accordingly, "[w]hile both officers

testified at trial that they immediately detected a strong smell of 'burnt marijuana,' the State failed to prove this fact by a preponderance of the evidence at the suppression hearing" and therefore the officers "had no probable cause to search the vehicle and seize the prescription bottles in the car or the trunk." (*Id.* at 19–20.) The court further found the officers' testimony of Plaintiff's apparent intoxication suspect. Judge Thornton concluded that the state failed to prove a valid exception to the warrant requirement or that Plaintiff was intoxicated beyond a reasonable doubt. (*Id.* at 20.) "Without the smell of burnt marijuana that would indicate defendant smoked marijuana in close proximity to the stop and any other signs of physical impairment, something more would be necessary to persuade the court that defendant is guilty beyond a reasonable doubt." (*Id.* at 21.) Plaintiff was acquitted on all charges. (*Id.* at 22.)

On September 1, 2022, Plaintiff filed a federal suit against Officers Menosky and Sasso, as well as against former Holmdel police chief John Mioduszewski and the Township of Holmdel. (ECF No. 1.) On December 2, 2022, Plaintiff filed an amended complaint. (ECF No. 22.) Plaintiff claims Defendant Holmdel is liable under 42 U.S.C. § 1983 for a policy, custom, and practice of unconstitutional searches, arrests, and charges, and for failing to properly train its police officers. (FAC ¶¶ 70–73.)[2]

On January 6, 2023, Plaintiff filed the instant Motion for Partial Summary Judgment against Defendant Holmdel seeking to preclude Defendant from contesting issues decided in the state proceeding. (ECF No. 32.)

---

[2] Defendants jointly moved to dismiss on January 5, 2023. (ECF No. 30.) On March 12, 2023, Plaintiff moved to file a second amended complaint to add Count III. (ECF No. 44-1.) Several days later, the Court administratively terminated Defendants' motion pending decision on Plaintiff's motion to file an amended complaint. (ECF No. 48.)

4

## II. LEGAL STANDARD

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989).

In deciding a summary judgment motion, a court "may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159–60 (3d Cir. 2003) ("[T]he court must view the facts and any reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment.").

## III. DISCUSSION

The doctrine of collateral estoppel, also called issue preclusion, "bars relitigation of any issue [] actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." *State v. Gonzalez*, 380 A.2d 1128, 1131 (N.J. 1977). Under New Jersey law, the party asserting collateral estoppel must show: "(1) The issue to be precluded is identical to the issue decided in the previous proceeding . . . (2) the issue was actually litigated in the prior action . . . (3) the court in the prior proceeding issued a final judgment on the merits . . . (4) the determination of the issue was essential to prior judgment . . . and (5) the party against

5

whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *In Re Dawson*, 641 A.2d 1026, 1034–35 (N.J. 1994).[3]

The Court's inquiry does not end with these five elements. Collateral estoppel is an equitable judicial doctrine and as such is "not to be applied if there are sufficient countervailing interests." *Matter of Coruzzi*, 472 A.2d 546, 551 (N.J. 1984) (court not required to give collateral estoppel effect to the factual determination behind a judge's bribery conviction given the "unique nature of [the] proceedings"). The Court will not preclude a party litigating an issue when it would be "unfair to do so." *Allen v. V & A Bros.*, 26 A.3d 430, 444 (N.J. 2011) (citations and quotations omitted). While New Jersey's collateral estoppel jurisprudence does not mandate that courts allow equitable considerations to "overcome the ordinary preclusive effects of prior judgments," *Gannon v. Am. Home Prod., Inc.*, 48 A.3d 1094, 1107 (N.J. 2012), courts regularly rely on fairness considerations to inform the collateral estoppel analysis. *Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1011 (N.J. 2006).

Courts are especially sensitive to fairness considerations when a *plaintiff* seeks to collaterally estop a *defendant* from litigating an issue decided in a prior proceeding — known as "offensive" collateral estoppel. *See Mann v. Estate of Meyers*, 61 F. Supp. 3d 508, 522–23 (D.N.J. 2014); *see also Smith v. Borough of Dumore*, 516 F. App'x 194, 199 (3d Cir. 2013) (recognizing "a unique potential for unfairness" when a plaintiff asserts non-mutual offensive collateral estoppel). Under these circumstances, the Court has "broad discretion" to decide whether collateral estoppel applies. *Id.* (quoting *Jean Alexander Cosms., Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 248–49 (3d Cir. 2006) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979))).

---

[3] A federal court asked to give preclusive effect to a state court judgment applies that state's law. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999).

Here, Plaintiff seeks to preclude Defendant from contesting the unconstitutionality of his search, arrest, and prosecution. Plaintiff argues that this fact was established at the state *de novo* appeal, and that these issues are identical to what Plaintiff will have to prove against Defendant. (Pl. Br. in Supp., ECF No. 32-1 at 10–11.) Plaintiff devotes much of his brief to the fifth element of collateral estoppel, that Defendant was party to or in privity with a party to the prior proceedings. Plaintiff contends that even if Defendant was not party to the prior proceedings, Defendant was virtually represented since the municipal prosecutor was appointed by Defendant and represented the municipality's interest in prosecuting Plaintiff. (*Id.* at 13–14.) Plaintiff also argues that Defendant participated in the trial through "oversight and control" of the Holmdel police officers who initiated the criminal case against Plaintiff and testified at Plaintiff's municipal court trials. (*Id.* at 13.)

Defendant disagrees that it should be bound by the result of Plaintiff's *de novo* appeal. Defendant argues that the facts Plaintiff cites in order to show Defendant's privity with the prosecuting authority — the Holmdel municipal prosecutor's contract with Defendant, Defendant's oversight of its police department, the Holmdel officers' testimony in the municipal court proceedings — are "superficial" or "ministerial" acts that do not evidence control over the prosecution. (Def.'s Br. in Opp'n at 14–17, ECF No. 37-1.) Defendant maintains that the municipal prosecutor is an actor of state, not municipal, government, subject to exclusive state control in enforcing state law. (*Id.* at 19–22.) Defendant also claims that other equitable considerations militate against applying collateral estoppel in this case. For one, Defendant claims that the court at the *de novo* appeal made erroneous factual findings and legal conclusions that should bar granting the state proceeding preclusive effect. (*Id.* at 28–34.) Similarly, Defendant argues that the

inconsistencies among the results of the three state proceedings counsel against applying collateral estoppel. (*Id.* at 35–36.)

For the reasons that follow, the Court finds that Plaintiff's failure to sufficiently establish the elements of collateral estoppel, along with additional equitable considerations, militate against applying collateral estoppel in this instance.

A. <u>ELEMENTS OF COLLATERAL ESTOPPEL</u>

Of the five elements of collateral estoppel, the parties primarily dispute whether Defendant was in privity with a party to the state proceedings.[4]

In deciding whether two parties are in privity, "the New Jersey Supreme Court has suggested that the determinative question . . . is whether one party was the 'virtual representative' of the other, in the sense that the former could control the arguments of the latter." *Evans v. City of Newark*, No. 14-120, 2023 WL 2535283, at *12 (D.N.J. Mar. 16, 2023) (citing *State v. K.P.S.*, 112 A.3d 579, 587 (N.J. 2015)); *see also Zirger v. Gen. Acc. Ins. Co.*, 676 A.2d 1065, 1071 (N.J. 1996) ("A relationship is usually considered 'close enough' only when the party is a virtual representative of the non-party, or when the non-party actually controls the litigation." (quoting *Collins v. E.I. DuPont de Nemours & Co.*, 34 F.3d 172, 176 (3d Cir. 1994))). To find privity, there must be "such an identification of interest between the two [parties] as to represent the same legal right." *Zirger*, 676 A.2d at 1071 (citation omitted). Ultimately, the question of privity is whether the party has "had his day in court on an issue." *McAndrew v. Mularchuk*, 183 A.2d 74 (N.J. 1962).

---

[4] Plaintiff asserts in passing that Defendant *was* party to the state proceedings, so it need not necessarily establish privity in order to meet the fifth element. (ECF No. 42 at 6.) The Court finds that Defendant was not party to the prior proceedings. Plaintiff faced prior prosecution for violating New Jersey state law, and the party prosecuting the case in municipal court was not Defendant but the State of New Jersey. *Gonzalez*, 380 A.2d at 1134 (acknowledging "the State" as the party to a prior criminal proceeding for collateral estoppel purposes). That they are different parties is underscored by the fact that the State is immune from section 1983 liability while Defendant is not. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).

Although superficially tempting to bind Defendant to the results of proceedings partially litigated by the Holmdel municipal prosecutor, Plaintiff has failed to establish that the State of New Jersey was Defendant's "virtual representative" at the state proceedings. While municipal prosecutors are empowered to represent both the municipality and the State, N.J. Stat. Ann. § 2B:25-5(a), when enforcing state law, they represent the State exclusively. *See Matter of Segal*, 617 A.2d 238, 244 (N.J. 1992) (referring to "the State" as the municipal prosecutor's "client" in the enforcement of state law). Defendant's control over the prior state litigation appears even further attenuated because the Monmouth County Prosecutor's Office, not the Holmdel municipal prosecutor, represented the State at the *de novo* appeal. (ECF No. 37-1 at 4); *see also* N.J. Ct. R. 3:23-9.

Plaintiff presents no evidence to support the proposition that Defendant could or did control the prosecution through the Holmdel municipal prosecutor. In determining whether a party has control sufficient to establish privity, a court must assess whether the party exercises "effective choice as to the legal theories and proofs to be advanced [on] behalf of the party to the action . . . ." *Allen*, 26 A.3d at 445 (quoting Restatement (Second) of Judgments § 39 cmt. C (Am. Law Inst. 1982)). Plaintiff offers no evidence that Defendant either exerted or had the ability to exert influence over the litigation decisions. Rather, the entity making prosecutorial decisions at the municipal court proceedings was the municipal prosecutor, who, as discussed *supra*, acts exclusively on behalf of the State. *See Matter of Segal*, 617 A.2d at 244; *see also State v. Prickett*, 572 A.2d 1166, 1169 (N.J. Super. Ct. App. Div. 1990) ("Preparation of the State's case is clearly a prosecutorial function and is a responsibility that cannot be shifted to others. . . . Thus, it is the municipal prosecutor who . . . does all else necessary to prepare and present the State's cases in the municipal court.").

With no evidence establishing control, the Court cannot merely assume that the State of New Jersey and the Township of Holmdel share sufficient interests such that the State acted as Defendant's virtual representative. The absence of privity between Defendant and the State is underscored by their divergent interests in the state proceedings' outcome. A victorious municipal court defendant's subsequent section 1983 action poses no danger to the State. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State . . . ."). Defendant enjoys no such immunity. *Id.* at 58 (affirming that municipalities are "persons" subject to liability under section 1983 (citing *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690 (U.S. 1978)). These disparate consequences for the State and Defendant as a result of a state acquittal and favorable suppression rulings preclude finding an "identification of interest" supporting privity here. *Zirger*, 676 A.2d at 1071; *see also Sadruddin v. City of Newark*, 34 F. Supp. 2d 923, 928 (D.N.J. 1999) ("However, privity requires that the parties have such a connection of interest in the litigation and the subject matter that reason and justice precludes a relitigation of the issues.").[5]

Plaintiff's remaining arguments regarding control are unpersuasive. The fact that the municipal prosecutor is appointed by the municipality and is paid by the municipality "is of no [] consequence" to the question of control. *Kershenblatt*, 624 A.2d at 1046 (citing *Kagan v. Caroselli*, 153 A.2d 17, 22 (N.J. 1959)); *see also* Restatement (Second) of Judgments § 39 cmt. C (Am. Law Inst. 1982) ("It is not sufficient, however, that the person merely . . . supplied counsel

---

[5] These divergent interests may in large part explain the procedural posture of this action, in which the State chose not to appeal while Defendant — at least here — strongly contests the legal and factual validity of the proceedings. (ECF No. 37-1 at 28–35). If Defendant were in the driver's seat of the prosecution, it likely would have appealed the suppression ruling rather than risk being subsequently bound in a follow-on federal civil action.

to the party . . . ."); *see also Criss v. Cosgrove*, No. 04-2244, 2007 WL 542228, at *5 (D.N.J. Feb. 16, 2007). Nor can Plaintiff establish control sufficient to show privity through the participation by Holmdel police officers in the proceedings by forwarding evidence to the municipal prosecutor or testifying at two of the earlier proceedings. *See Allen*, 26 A.3d at 446 (testimony by party's employee in prior proceeding was insufficient to establish privity because "there is no evidence in the record to suggest that [the witness employee] exercised any control over the litigation").[6]

### B. FAIRNESS CONSIDERATIONS

Even had Plaintiff established privity and the five-element test were met, fairness considerations raised by the unique posture of the case and nature of the state proceedings counsel against preclusion.

New Jersey's collateral estoppel analysis requires the Court to examine the circumstances of the prior and instant proceedings to determine whether preclusion would be fair. A court should refuse to apply collateral estoppel when a party "lacked full and fair opportunity to litigate the issue in the first action or [] other circumstances justify affording him an opportunity to relitigate the issue." *Zirger*, 676 A.2d at 1071 (quotation omitted); *see also Kortenhaus v. Eli Lilly & Co.*, 549 A.2d 437, 439 (N.J. Super. Ct. App. Div. 1988) ("The application of offensive collateral

---

[6] Plaintiff relies heavily on *State v. Rodriguez*, 324 A.2d 911 (N.J. Super. Ct. App. Div. 1974) as the "closest precedent" under New Jersey law to the facts here. (ECF No. 32-1 at 14; ECF No. 42 at 2–4.) However, *Rodriguez* is inapposite because it addresses a unique question of preclusion based on since-repealed New Jersey statutes governing forfeiture proceedings following criminal proceeding and is silent as to the equitable doctrine of collateral estoppel. *Rodriguez*, 324 A.2d at 912. In any event, any discussion of preclusion against the state is dicta because the criminal charges against the *Rodriguez* defendant were dropped by the prosecutor, not dismissed. *Id.* at 62. Plaintiff's reliance on dicta from a fifty-year-old inapplicable case does not assist the Court in "predict[ing] how the state's highest court would decide were it confronted with the problem." *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 661 (3d Cir. 1980). The out-of-state authorities Plaintiff relies on likewise do not persuade the Court on the correct application of New Jersey law. *See, e.g., People v. Sims*, 651 P.2d 321, 333 (Cal. 1982), *superseded on other grounds as recognized by People v. Preston*, 43 Cal. App. 4th 450, 458 (Cal. App. 1996) (preclusion sought of ruling from administrative agency, not criminal court); *Wuerfel v. City of Seattle*, No. C03-3660JLR, 2006 WL 27207 (W.D. Wash. Jan. 5, 2006) (preclusion sought from ruling on violations of municipal not state law).

estoppel is a discretionary matter for the court and as a rule of efficiency should not be applied unless the court is fully satisfied with its fairness.").

Binding Defendant in a federal civil action to the results of a municipal criminal proceeding it did not control triggers fairness concerns given the vastly different stakes for Defendant in each proceeding. Assuming *arguendo* that Defendant held some sway in the state prosecution, the strategic allocation of resources to prosecute these minor drug and motor vehicle offenses, as well as to whether to appeal the de novo reversal, would clearly be different if the municipality knew its arguments could be precluded in a later civil rights claim. The sheer volume of municipal court matters renders it axiomatic that a municipal prosecutor's preparation for the types of cases heard in municipal court is, by necessity, far more limited than the preparation required for a trial on indictable charges in Superior Court. *See Matter of Segal*, 617 A.2d 238, 245 (N.J. 1992) (acknowledging the "limited pretrial preparation routinely undertaken by some municipal prosecutors" and that "much of the subject matter in controversy in the municipal courts is minor and, in such cases, informal practices should continue" (quoting *State v. Holup*, 601 A.2d 777 (N.J. Super. Ct. App. Div. 1992)). Furthermore, many municipal prosecutors, including the Holmdel municipal prosecutor, only work part-time. *In re Opinion 662*, 626 A.2d at 1087–88; *cf. Matter of Thomson*, 494 A.2d 1022, 1023 (N.J. 1985) (describing a municipal court's practice of only hearing cases on certain days when the municipal prosecutor and public defender were present).[7] Given these limitations, Plaintiff's prosecution in municipal court does not suggest that Defendant "had [its] day in court" on the constitutionality of the Holmdel officers' actions. *K.P.S.*, 112 A.3d at 585 (quoting *McAndrew v. Mularchuk*, 183 A.2d 74, 77 (N.J. 1962)).

---

[7] The Court takes judicial notice of the fact that the Holmdel municipal court sits one day per week, with a part-time prosecutor and a part-time judge. *See* Fed. R. Evid. 201(b); *Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001). Indeed, Plaintiff's second municipal court trial occurred over two days one-week apart in December 2018. *See generally* (2018 Mun. Ct. Tr.)

The inconsistencies between the two municipal court judges' findings on the critical issue of the officers' credibility and the court in the *de novo* appeal further cast doubt on the fairness of collateral estoppel here. The Restatement of Judgements, which the New Jersey Supreme Court has turned to for estoppel principles, *see Allen*, 26 A.3d at 445, counsels against the application of collateral estoppel in the face of inconsistent judgments. *See* Restatement (Second) of Judgments § 39 cmt. C (Am. Law Inst. 1982) ("Issue preclusion may also be denied when the determination in the prior action is inconsistent with another determination of the same issue."). Here, the judges in the municipal court proceedings and the judge in the *de novo* appeal reached different factual and legal conclusions. The municipal court judges who took live testimony from Officers Menosky and Sasso credited the officers' accounts of smelling marijuana in Plaintiff's car and whether Plaintiff appeared intoxicated during their interaction. From this, the municipal court judges concluded that the officers' search was constitutional. After reviewing the static transcripts from the municipal court proceedings, the judge at the *de novo* appeal found the officers' accounts incredible and held the search unconstitutional. The conflict between these "clearly inconsistent prior determinations," *ADP, LLC v. Rafferty*, 923 F.3d 113, 124 n.10 (3d Cir. 2019) (reading New Jersey law), likewise counsels against preclusion.

In arguing that there is no inconsistency among the state proceedings, Plaintiff claims that when a lower court is reversed, collateral estoppel is determined by the holding of the appellate court, regardless of the result below — here the *de novo* appellate court. (ECF No. 42 at 6 (citing *Leyse v. Bank of Am., Nat'l Ass'n*, 538 F. App'x 156, 159 (3d Cir. 2013)). While true, appellate courts normally "defer to trial courts' credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." *State v. Locurto*, 724 A.2d 234, 240 (N.J. 1999) (citations

omitted). Deference to credibility determinations is "more compelling" under New Jersey's "two-court rule," which holds that appellate courts "ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." *Id.* (citation omitted); *see also State v. Reece*, 117 A.3d 1235, 1242 (N.J. 2015).

Here, the unique nature of New Jersey's *de novo* appeal mechanism cautions against treating the *de novo* court like a normal appellate court for estoppel purposes. The New Jersey Superior Court on *de novo* appeal does not take new testimony. *See* N.J. Ct. R. 3:23-8 (in a *de novo* appeal, "the court may permit the record to be supplemented for the limited purpose of correcting a legal error in the proceedings below."). Rather, the court makes its own factual and legal findings, and "giv[es] due, although not necessarily controlling, regard to the opportunity of the magistrate to judge the credibility of the witnesses." *State v. Johnson*, 199 A.2d 809, 815 (N.J. 1964). This creates an uncommon situation in which a nominally appellate court may disregard credibility determinations made by a trial court.

This is exactly what happened here. At the municipal court proceedings, Judge Casey and Judge Smith heard in-person testimony from Officer Sasso and Officer Menosky. Each judge heard both witnesses testify before them, evaluated their demeanor, body language and substance of their testimony, and found credible the officers' testimony that they smelled marijuana and that Plaintiff appeared intoxicated. (Feb. 13, 2017 Tr., ECF No. 37-2 at 29–37.) At Plaintiff's *de novo* appeal, the court reviewed the static record and implicitly disagreed, finding the officers not credible. (*Id.* at 19–20.) Under these unique circumstances, the Court finds that granting collateral estoppel would offend principles of fairness, and, as a result, exercises its discretion to deny Plaintiff's motion for the reasons stated herein.

## IV. CONCLUSION

For the foregoing reasons, and for other good cause shown, Plaintiff's Motion for Partial Summary Judgment (ECF No. 32) is **DENIED**. An appropriate Order will follow.

_____
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: July 6, 2023