NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NEDAL ELFAR,<br><br>Plaintiff,<br><br>v.<br><br>TOWNSHIP OF HOLMDEL, MATTHEW MENOSKY, MICHAEL SASSO, and JOHN MIODUSZEWSKI,<br><br>Defendants. | Civil Action No. 22-5367 (RK) (JBD)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Township of Holmdel, Matthew Menosky, Michael Sasso, and John Mioduszewski (collectively "Defendants"). (ECF No. 66-4, "Def. MTD.") The Court has carefully considered the record and the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED**, and Plaintiff's claims are dismissed without prejudice.

## I.    BACKGROUND

### A.  FACTUAL BACKGROUND[1]

On July 4, 2016, at approximately 2:54 a.m., Defendants Matthew Menosky ("Menosky") and Michael Sasso ("Sasso") initiated a traffic stop of Plaintiff Nedal Elfar ("Plaintiff") in

---

[1] The parties dispute what materials are properly before the Court on Defendants' Motion to Dismiss. Prior to the commencement of this malicious prosecution action, Plaintiff was convicted in two Holmdel municipal court trials before being acquitted on a de novo appeal in the Law Division of the New Jersey

Holmdel, New Jersey. (Second Amended Complaint ("SAC"), ECF No. 58 ¶ 11.) Menosky and Sasso were patrolman with the Holmdel Police Department. (SAC ¶¶ 8–9.) At the time of the traffic stop, Sasso was a new officer with Menosky serving as his "training officer." (*Id.* ¶ 21.) The stated bases for the traffic stop were speeding and failing to disengage high beams, also referred to as multiple-beam lighting. (*Id.* ¶¶ 11, 21.)

The police vehicle driven by Menosky and Sasso was equipped with a dashcam and microphone system, known as an "MVR." (*Id.* ¶ 12.) The MVR was engaged at the time the stop began. (*Id.*) After Menosky and Sasso effected a traffic stop of Plaintiff's vehicle, Sasso approached the driver's side of the vehicle, while Menosky approached the passenger side. (*Id.* ¶ 13.) Sasso asked Plaintiff if he had been "drinking." (*Id.*) Plaintiff was not immediately removed from the vehicle. (*Id.*) While Sasso spoke with Plaintiff, Menosky shined a flashlight into the vehicle through the window. (*Id.*) It is during this time that Sasso would later testify he smelled "burnt marijuana." (*Id.*)

---

Superior Court. Both parties rely extensively on documents submitted as part of the records of those proceedings as well as the factual and legal conclusions of the municipal court and Law Division judges. In evaluating a motion to dismiss, courts may consider "documents that are attached to or submitted with the complaint . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal quotation marks and citation omitted). Judicial proceedings are public records of which courts may take judicial notice. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). However, on a motion to dismiss, a court "may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 427 (3d Cir. 1999) (citation omitted). A court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). While the Court takes judicial notice of the existence and legal effect of the municipal court and Law Division proceedings, the Court will not simply accept the truth of the facts recited in those proceedings. The full record submitted to the Court is more appropriate on a motion filed pursuant to Federal Rule of Civil Procedure 56.

Through the passenger window, Menosky noticed a pill bottle in plain view and told Sasso to inquire about Plaintiff's medications. (*Id.* ¶ 14.) Sasso obliged, and Plaintiff responded that he had diabetes. (*Id.*) Menosky then also noticed foil packs with tear-off medications in the center console and a pill bottle tucked into one of the back seats in plain view. (*Id.*) Neither the bottles nor the foil packs had labels removed or any suspicious qualities about them. (*Id.*) At this time, Menosky asked Plaintiff is he could inspect the pill bottle in the back seat. (*Id.* ¶ 15.) Plaintiff was not given a consent-to-search form nor was he advised that he could decline the search. (*Id.*) Plaintiff provided the pill bottle to Menosky. (*Id.*) Menosky opened the bottle and detected that it contained a small amount of marijuana. (*Id.*) At this point, Menosky ordered Plaintiff to exit his vehicle. (*Id.*)

Menosky then asked Plaintiff if he had been smoking marijuana. (*Id.* ¶ 16.) Plaintiff responded that he had smoked the day before. (*Id.*) Menosky then conducted a field sobriety test on Plaintiff. (*Id.*) According to Plaintiff, he "passed the field sobriety test to any reasonable person." (*Id.*) After conducting the field sobriety test, Menosky asked Sasso "are you on?," pointing his flashlight at Sasso's belt where there is a button to mute the microphone on the MVR. (*Id.* ¶ 17.) In response to Menosky's question, Sasso muted the MVR. (*Id.*) According to the officers' arrest reports, during the course of the traffic stop, Menosky and Sasso discussed whether probable cause existed to arrest Plaintiff. (*Id.* ¶ 18.) This included discussion of Menosky's "observations" and "findings" as to Plaintiff's performance on the field sobriety test. (*Id.* ¶¶ 35–37.) Because this conversation is not reflected elsewhere on the un-muted MVR, Plaintiff alleges that the discussion must have taken place during the time that the MVR was muted. (*Id.* ¶ 18.) According to Plaintiff, Holmdel police officers routinely mute the MVR to confer about probable cause for driving-while-impaired ("DWI") and related offenses. (*Id.*)

Thereafter, Plaintiff was arrested and charged with a DWI, reckless driving, speeding, use of multiple-beam lighting, drug possession by a motor vehicle operator, possession of fifty (50) grams or less or marijuana, use or possession of marijuana with intent to use, and possession, use, or being under the influence of marijuana. (*Id.* ¶¶ 19, 21.) According to Plaintiff, there was "no evidence to establish that marijuana was in [Plaintiff's] body while he was driving in a sufficient amount to cause 'substantial diminution' of 'mental faculties' or 'physical capability,' a requirement for probable cause to prosecute and to prove [DWI] on marijuana." (*Id.* ¶ 19.) The charges were signed by Sasso as the complaining witness based upon the determinations and orders of Menosky. (*Id.* ¶ 21.) Plaintiff was brought to the Holmdel police station and his vehicle was impounded. (*Id.* ¶ 19.) Plaintiff had to pay "hundreds of dollars in towing fees to release it." (*Id.*)

Plaintiff alleges that Sasso and Menosky violated Holmdel's MVR policy which requires that "[a]ll motor vehicle stops" are recorded "from the point of emergency . . . through the entire incident." (*Id.* ¶ 46.) The policy also provides that if an MVR is muted during the course of a traffic stop, officers "must announce it and state the reason for muting"—neither of which occurred during Plaintiff's traffic stop. (*Id.*) Notwithstanding this policy, Plaintiff alleges that Defendant Township of Holmdel ("Holmdel") has a pattern and practice of committing constitutional violations, pertaining to officers' use of MVRs. (*Id.* ¶ 3.) Under Holmdel's MVR policy, police department supervisors were required to randomly review MVRs to "ensure officers . . . are acting within the scope of their authority and constitutional mandate . . . ." (*Id.* ¶ 48.) According to Plaintiff, Menosky and Sasso's behavior demonstrates that department supervisors "either conducted such random reviews, saw improper muting of MVRs and ignored it, or conducted no such random reviews and would have seen such improper muting had they done so." (*Id.*) Holmdel's "failure to adequately review the MVRs caused continuous muting of MVRs when

Holmdel police officers confer on probable cause for [DWI] and other related offenses." (*Id.* ¶ 61.) Plaintiff also filed a common law records request with Holmdel for twenty-eight (28) MVRs that Plaintiff suspected contained MVR muting during a DWI or similar arrest. (*Id.* ¶ 50.) According to Plaintiff, several MVRs reflect "apparent improper muting of the [MVR] to confer on probable cause." (*Id.* ¶ 51.) Plaintiff further alleges that Menosky was repeatedly recognized by the Holmdel Police Department for his volume of DWI arrests and that the sheer volume of DWI arrests effectuated by Menosky "should have caused the Holmdel Police Department to review the MVR for at least some of them." (*Id.* ¶ 52.) According to Plaintiff, "but for the muted MVR, [Defendants'] malicious prosecution of [Plaintiff] would not have occurred or would have ceased far earlier." (*Id.*)

Plaintiff also alleges that Holmdel does not adequately train or supervise its officers on the "substantial diminution" standard for DWIs based on marijuana and that at the time of Plaintiff's traffic stop, Holmdel Police Department "had no written training or guidance" on the "substantial diminution" standard. (*Id.* ¶¶ 48, 62.) Further, Plaintiff alleges that Holmdel police officers are not adequately trained or supervised in the consent-to-search and plain view doctrines as evidenced by Menosky's conflation of the doctrines. (*Id.* ¶ 62.) Finally, Plaintiff alleges that Holmdel's custom of requiring police officers to "grant permission to dismiss charges" is a "pattern and practice that inexorably leads to malicious prosecution." (*Id.* ¶ 61.)

### B. PROCEDURAL HISTORY

On February 13, 2017, Plaintiff was tried on the above-mentioned charges in Holmdel municipal court. (*Id.* ¶ 22.) During the course of the trial, Plaintiff discovered that the MVR was muted when Menosky conferred with Sasso about Menosky's observations regarding Plaintiff's field sobriety test. (*Id.* ¶ 28.) The municipal court found Plaintiff guilty of the DWI and possession

of marijuana offenses but dismissed the speeding and multiple-beam lighting charges. (*Id.* ¶ 29.) Plaintiff's driver's license was suspended, and Plaintiff was ordered to participate in a DWI remedial course, which took between twelve (12) and twenty-four (24) hours and cost Plaintiff "thousands of dollars." (*Id.*) Plaintiff filed a de novo appeal of his conviction to the Law Division of the New Jersey Superior Court. (*Id.* ¶ 30.) While the appeal of his conviction was pending, the Monmouth County Prosecutor's Office agreed to a consent order wherein Plaintiff was permitted to drive for limited reasons, including work or emergencies, between 9:00 a.m. and 5:00 p.m. (*Id.*) However, the New Jersey Department of Motor Vehicles ("DMV") did not recognize the order and continued to list him as "suspended" in its database, forcing Plaintiff to carry the consent order with him. (*Id.*) On one occasion, Plaintiff was "stopped and threatened with arrest because he was listed as 'suspended' in the database." (*Id.*)

On October 27, 2017, the Monmouth County Prosecutor's Office consented to remand Plaintiff's appeal to municipal court. (*Id.* ¶ 31.) Thereafter, Plaintiff filed a motion for a new trial. (*Id.* ¶ 32.) The basis for the new trial was the revelation that the MVR had been muted during the traffic stop. (*Id.* ¶ 31.) While Plaintiff's motion was pending, the municipal prosecutor wrote to Plaintiff's counsel indicating that Defendant John Mioduszewski ("Mioduszewski"), former chief of the Holmdel Police Department, had spoken to the judge *ex parte* and that the prosecutor was now precluded from dismissing the DWI charge. (*Id.* ¶ 32.) In a number of other correspondences, the municipal prosecutor indicated that, although she would love to resolve the case, the judge and Mioduszewski wanted the case to "run it's [sic] course." (*Id.*) During this time, Plaintiff "was subject to the same onerous driving restrictions precluding driving after 5:00pm," and his license remained suspended in the DMV database. (*Id.* ¶ 34.)

Plaintiff's motion for a new trial was granted, and on December 7, 2018, Plaintiff was tried for a second time in Holmdel municipal court, this time before a different municipal judge. (*Id.* ¶¶ 33–34.) On December 14, 2018, Plaintiff was again convicted. (*Id.* ¶ 41.) The municipal court imposed over $1,000 in fines and suspended Plaintiff's driver's license for six (6) months. (*Id.*) Plaintiff again filed an appeal to the Law Division. (*Id.* ¶ 42.) On August 3, 2022, the Law Division acquitted Plaintiff on all charges. (*Id.* ¶ 43; *see also* ECF No. 32-4.)

On September 1, 2022, Plaintiff filed the instant federal suit against Defendants. (ECF No. 1.) On December 2, 2022, Plaintiff filed an Amended Complaint, (ECF No. 22), and on July 31, 2023, Plaintiff filed a Second Amended Complaint, which is now the operative pleading, (SAC.)[2] In Count One, Plaintiff brings claims against Menosky, Sasso, and Mioduszewski ("Law Enforcement Defendants") under 42 U.S.C. § 1983 ("Section 1983") and New Jersey Civil Rights Act ("NJCRA") for malicious prosecution in violation of the Fourth Amendment of the United States Constitution and its New Jersey analog. (*Id.* ¶¶ 63–69.) In Count Two, Plaintiff brings claims against Holmdel under Section 1983 and the NJCRA for municipal liability based on a pattern and practice of constitutional violations that proximately caused Plaintiff's constitutional injuries. (*Id.* ¶¶ 70–73.) In Count Three, Plaintiff brings a common law claim for malicious prosecution. (*Id.* ¶¶ 74–78.)

Plaintiff alleges that he has suffered significant and lifelong damages including tens of thousands of dollars in legal fees, thousands of dollars in fines, and onerous restrictions on his driving privileges. (*Id.* ¶ 60.) Plaintiff further alleges that the traffic stop, arrest, and prosecution

---

[2] Defendants moved to dismiss on January 5, 2023. (ECF No. 30.) On March 12, 2023, Plaintiff moved to file a Second Amended Complaint. (ECF No. 44-1.) Several days later, the Court administratively terminated Defendants' motion pending decision on Plaintiff's motion to file an Amended Complaint. (ECF No. 48.) On July 26, 2023, the Honorable Brendan Day, U.S.M.J., granted Plaintiff's request to file the second amended complaint. (ECF No. 57.)

were "substantial factor[s] in his divorce from his wife" for which he continues to suffer emotional distress and which caused severe embarrassment, forcing him to move from the small Egyptian-American community in which he resided. (*Id.*) Plaintiff seeks compensatory, emotional distress, reputational, nominal, and punitive damages as well as attorney's fees and costs. (*Id.* at 28–29.)

On January 6, 2023, Plaintiff filed a Motion for Partial Summary Judgment. (ECF No. 32.) In it, Plaintiff asked the Court to preclude Defendant from contesting the unconstitutionality of his search, arrest, and prosecution based on the doctrine of collateral estoppel. (ECF No. 32-1 at 10–11.) Plaintiff argued that this issue was determined by the Law Division during Plaintiff's de novo appeal and should bind Defendants in this proceeding. (*Id.*) The Court denied Plaintiff's Motion based on the absence of privity between Defendants in this case and the State in Plaintiff's state court proceedings and because granting the use of offensive collateral estoppel would offend principles of fairness. (ECF No. 55 at 11, 14.)

Thereafter, on September 26, 2023, Defendants filed a Motion to Dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def. MTD.) Plaintiff filed a Brief in Opposition, (ECF No. 68, "Pl. Opp."), and Defendants filed a Reply, (ECF No. 64-5, "Def. Reply"). Now pending before the Court is Defendants' Motion.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure (12)(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of

the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 406 (D.N.J. 2018). "A pleading that offers labels and conclusions or a formulistic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

## III. <u>DISCUSSION</u>

The Court will begin with Plaintiff's constitutional malicious prosecution claims.

### A. MALICIOUS PROSECUTION

Plaintiff brings malicious prosecution claims premised on the federal and New Jersey Constitutions pursuant to Section 1983 and the NJCRA respectively. To state a claim under Section 1983, a plaintiff must establish that (1) the conduct deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States and (2) the conduct challenged was committed by a person acting under color of state law. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).

To state a claim for malicious prosecution in violation of the Fourth Amendment of the United States Constitution, a plaintiff must show:

> (1) the defendants initiated a criminal proceeding;
> (2) the criminal proceeding ended in plaintiff's favor;
> (3) the proceeding was initiated without probable cause;
> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003); *Curry v. Yachera*, 835 F.3d 373, 379-80 (3d Cir. 2016). The analysis for a New Jersey Constitutional malicious prosecution claim is the same as a federal Constitutional claim. *See Estate of Martin v. U.S. Marshals Serv. Agents*,

649 Fed. Appx. 239, 245 n.4 (3d Cir. 2016) (holding that "it appears undisputed that [p]laintiffs' claims under the New Jersey Constitution and the New Jersey Civil Rights Act trigger the same legal elements and principles as . . . [the] federal causes of action [under Section 1983]"); *Lucia v. Carroll*, No. 12–3787, 2014 WL 1767527, at *5 (D.N.J. May 2, 2014) (finding that the analysis for plaintiff's Article 1, Paragraph 7 of the New Jersey Constitution malicious prosecution claim was the same as its Section 1983 claims). Accordingly, the Court will apply the same standard to Plaintiff's malicious prosecution claims brought under the federal and New Jersey Constitutions.

Plaintiff alleges the traffic stop, arrest, and prosecution "were without probable cause." (SAC ¶ 66.)[3] Plaintiff further alleges that the Law Enforcement Defendants acted with malice or improper purpose because (1) no reasonable officer could have found "substantial diminution" based on Plaintiff's field sobriety test, (2) Menosky and Sasso gave several different accounts of what was said while the MVR was muted, (3) Menosky and Mioduszewski would not allow dismissal of Plaintiff's DWI charge, in part based on *ex parte* conversations between Mioduszewski and the municipal court judge ensuring the continuation of Plaintiff's prosecution. (*Id.* ¶ 67.) Plaintiff also alleges that he suffered a deprivation of liberty, including that he was detained for at least one hour "after the initiation of charges against him, i.e. the summonses," his car was "seized for several hours," he was "required to appear no less than 17 times in municipal court," he was served with over forty (40) notices to appear, and he was subjected to onerous

---

[3] Contrary to Plaintiff's assertion, as a matter of law, the legal standard for a vehicular stop is not probable cause—rather, an officer must have "a reasonable and articulable suspicion that the driver of a vehicle, or its occupants, is committing a motor-vehicle violation or a criminal or disorderly persons offense to justify a stop." *State v. Scriven*, 140 A.3d 535, 542 (2016).

driving restrictions. (*Id.* ¶ 65.) Finally, Plaintiff alleges that the proceedings ended favorably for him as he was acquitted on all charges. (*Id.* ¶ 68.)

Defendants raise two challenges to Plaintiff's malicious prosecution claim. First, Defendants argue that Plaintiff failed to demonstrate he was seized, or suffered a deprivation of liberty pursuant to a legal proceeding as required for a malicious prosecution claim. (Def. MTD at 27–31.) Relatedly, Defendants also contend Plaintiff's alleged damages were not caused by a seizure as a result of legal process; rather, his damages are the result of his conviction and sentence and are thus not cognizable in an action for malicious prosecution. (*Id.* at 31–33.) Second, Defendants argue that there was probable cause to arrest Plaintiff with a DWI and with possession of marijuana. (*Id.* at 33–39.)  Defendants do not contest element one (that Defendants initiated a criminal proceeding) or element two (that the criminal proceeding ended in Plaintiff's favor). Nor do Defendants contest element four (that defendants acted maliciously or for an improper purpose) for Plaintiff's constitutional malicious prosecution claims. As such, the Court will begin with Defendants' argument that plaintiff failed to allege he suffered a deprivation of liberty as a consequence of a legal proceeding.

      a.  <u>Deprivation of Liberty</u>

      *i.*   *Overview*

The Third Circuit has explained that a "prosecution without probable cause is not, in and of itself, a constitutional tort." *See Gallo v. City of Philadelphia*, 161 F.3d 217, 224 (3rd Cir. 1998). "The type of constitutional injury the Fourth Amendment is intended to redress is the deprivation

of liberty accompanying prosecution, not prosecution itself." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005).[4]

The critical issue in this case is the relevant time period for a malicious prosecution claim. Although both cognizable under the Fourth Amendment, malicious prosecution claims and false arrest claims differ in that a "claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007) (citations omitted). Once a plaintiff is bound over by a magistrate, arraigned, or issued a summons, then any further detention forms the basis for the "entirely distinct" tort of malicious prosecution, which does not remedy detention without legal process, but rather, the "*wrongful institution* of legal process." *Wallace v. Kato*, 549 U.S. 384, 390 (2007) (emphasis in original). The relevant seizure "must occur chronologically after the pressing of charges." *Basile v. Twp. of Smith*, 752 Supp. 2d 643, 660 (W.D. Pa. 2010); *see also Roberts v. Caesar's Ent., Inc.*, 72 F. Supp. 3d 575, 581 (E.D. Pa. 2014) ("What occurred prior to

---

[4] Plaintiff argues that this principle from *DiBella* was "expressly rejected" by the Supreme Court in *Thompson v. Clark*, 596 U.S. 36 (2022). (Pl. Opp. at 24.) Plaintiff quotes the following language from *Thompson*, 596 U.S. at 43: "the gravamen of the Fourth Amendment claim for malicious prosecution, as this Court has recognized it, is the wrongful initiation of charges without probable cause. And the wrongful initiation of charges without probable [] cause is likewise the gravamen of the tort of malicious prosecution." (Pl. Opp. at 24–25.) Plaintiff's argument is both incorrect and misleading. The Supreme Court in *Thompson* did not consider what constitutes a deprivation of liberty for element five of a malicious prosecution claim. Rather, the Supreme Court explained that the "*narrow* dispute in this case concerns *one element* of the Fourth Amendment claim under § 1983 for malicious prosecution." *Thompson*, 596 U.S. at 43 (emphasis added). That element was element two—whether the prosecution ended in the plaintiff's favor—which is not at issue in this case. *Id.* at 41, 44. Moreover, the language quoted by Plaintiff was only for the purpose of stating that the most analogous tort to a Fourth Amendment malicious prosecution claim is a tort claim for malicious prosecution. *Id.* at 43. The Supreme Court neither expressly nor impliedly overruled *DiBella*, which this Court finds remains good law.

the prosecution, that is, the time between arrest and the lodging of formal charges, is not a basis for a malicious prosecution claim.").

Against this backdrop, in the Third Circuit, a warrantless arrest lacking probable cause is not a seizure for purposes of a malicious prosecution claim. *See Laufgas v. Patterson*, 206 F. App'x 196, 198 (3d Cir. 2006) (plaintiff's arrest and two-hour detention occurred "prior to the filing of any criminal complaint" and therefore "cannot serve as the basis for [plaintiff's] malicious prosecution claim."); *Dinoia v. Cumbo*, No. 2:12-03175, 2015 WL 6739114, at *3 (D.N.J. Nov. 4, 2015) ("To show deprivation of liberty, it is not enough that a plaintiff contend that he was arrested."); *Robinson v. Fetterman*, 378 F. Supp. 2d 534, 544–45 (E.D. Pa. 2005) (same).

Furthermore, the Third Circuit has repeatedly held that the relevant period of detention for a malicious prosecution claim does not include *post*-conviction detention. *Donahue v. Gavin*, 280 F.3d 371, 380 (3d Cir. 2002); *see also Laufgas*, 206 F. App'x at 198 (same); *DiBella*, 407 F.3d at 603 (same); *Torres v. McLaughlin*, 163 F.3d 169 (3d Cir. 1998) (same). In short, malicious prosecution claims are concerned with pretrial restrictions once formal charges have been levied. To these ends, the Third Circuit has explained that "[p]retrial custody and some *onerous* types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure." *DiBella*, 407 F.3d at 603 (emphasis added).

In this case, Plaintiff alleges that he was seized within the meaning of the Fourth Amendment in the following ways: (1) he was arrested; (2) his vehicle was impounded; (3) he was held at the police station after he was charged; (4) he was required to appear in municipal court for his trials; and (5) following his initial municipal court trial, his license was suspended and he was

required to complete a DWI course before a consent order was issued wherein he was subjected to certain driving restrictions.

First, as the Court noted above, the relevant time period for a malicious prosecution claim is *after* an arrest and initiation of charges—in this case, after a Complaint-Summons was issued to Plaintiff. As noted above, courts in the Third Circuit have expressly held that a warrantless arrest is not a cognizable seizure for a malicious prosecution claim because it is not the consequence of a legal proceeding. Thus, Plaintiff's arrest itself does not provide a basis for a Fourth Amendment seizure for purposes of a malicious prosecution claim.

Second, Plaintiff's appearance in municipal court for trial is also insufficient for a Fourth Amendment seizure. The Third Circuit has held that "the Fourth Amendment does not extend beyond the period of pretrial restrictions." *DiBella*, 407 F.3d at 603; *see also Torres*, 163 F.3d at 174 ("the limits of the Fourth Amendment protection relate to the boundary between arrest and pretrial detention"). Moreover, the Third Circuit has determined that the issuance of a summons and subsequently having to attend one's own trial, without more, is "not a government 'seizure' in a 42 U.S.C. § 1983 malicious prosecution action for violation of the Fourth Amendment." *DiBella*, 407 F.3d at 603; *see also Robinson*, 378 F. Supp. 2d at 544 (E.D. Pa. 2005) (same).

Third, any penalties or fines imposed after Plaintiff was convicted at his first trial, including the license suspension, DWI course, and travel restrictions, cannot provide the basis for his malicious prosecution claim. Plaintiff argues that any penalties he suffered following his first conviction in municipal court and pending his appeal in the Law Division are relevant to his malicious prosecution claim because the Law Division proceeding is a "continuation of the municipal trial." (Pl. Opp. at 16. (citing *State v. Robertson*, 155 A.3d 571, 576 (2017))). Plaintiff is correct that DWI cases are tried in municipal court, which has jurisdiction over motor vehicle

offenses and traffic laws, and that, upon conviction, a defendant may appeal to the Law Division, where the defendant is entitled to a de novo trial. *See Robertson*, 155 A.3d at 576. The Law Division makes its own findings of fact and conclusions of law but defers to the municipal court's credibility findings, giving "due, although not necessarily controlling, regard" to same. *Id.* (citations omitted). At the de novo trial, the defendant is presumed innocent, and the State again bears the burden of proof. *Id.* According to Plaintiff, because a municipal court defendant retains the presumption of innocence pending appeal to the Law Division, the Law Division proceeding is merely a continuation of the municipal proceedings making any punishment imposed by the municipal court as part of a conviction, in reality, a *pretrial* deprivation of liberty. (Pl. Opp. at 16. (citing *Robertson*, 155 A.3d at 576)). This contention is specious.

*Robertson* does not stand for the proposition that de novo appeals of municipal court convictions are a continuation of municipal trials or that sentences imposed as a result of those convictions are cognizable seizures for purposes of a malicious prosecution claim. In *Robertson*, the New Jersey Supreme Court considered the appropriate standards for when a court should stay the suspension of a driver's license imposed by a municipal court pursuant to a DWI conviction while the case was pending appeal to the Law Division. *Id.* at 577. As Defendants point out in their Reply brief, nothing in *Robertson* suggests that a municipal court conviction is vacated pending appeal to the Law Division; rather, in considering whether to "stay a sentence," the *Robertson* court made clear that the underlying conviction upon which the sentence is based stands while the appeal is pending. (Def. Reply at 8, 10.); *see Robertston*, 155 A.3d. at 577.[5]

Absent any caselaw to the contrary, the Court finds that the restrictions imposed on Plaintiff's liberty *after* his conviction in municipal court cannot provide a basis for his malicious

---

[5] Plaintiff also cites a number of cases that purportedly stand for the proposition that "malicious prosecution applies to initiation *and continuation, including re-trial.*" (Pl. Opp. at 25.) Plaintiff cites *Geness v. Cox*, 902

prosecution claim. *See Donahue*, 280 F.3d at 380 (post-conviction restrictions cannot provide a basis for a malicious prosecution claim); *Laufgas*, 206 F. App'x at 198 (same); *DiBella*, 407 F.3d at 603 (same). Indeed, the Third Circuit in *Torres* rejected a similar request. 163 F.3d at 174–75. The *Torres* plaintiff argued that post-conviction detention, suffered while a motion for a new trial was pending, was a Fourth Amendment seizure for purposes of a malicious prosecution claim. *Id.* at 174. The Third Circuit disagreed. *Id.* ("At most, there may be some circumstances during pre-trial detention that implicate Fourth Amendment rights . . . we conclude that post-conviction incarceration cannot be a seizure within the meaning of the Fourth Amendment . . . ."). Likewise, the deprivations of liberty experienced by Plaintiff after his first trial while his appeal and motion for new trial were pending and after his second trial while his appeal to the Law Division was pending are not Fourth Amendment seizures.

The Court acknowledges that the procedural posture of a de novo trial in the Law Division following a conviction in municipal court is unusual because the State continues to bear the burden of proof and the defendant is presumed innocent. However, if this Court were to accept Plaintiff's expansive interpretation, virtually every defendant who appealed his municipal court conviction

---

F.3d 344 (3d Cir. 2018). This case says nothing about the continuation of trial or re-trial of a criminal defendant, nor does it consider the deprivation of liberty element of a malicious prosecution claim. *See generally id.* The pincite provided by Plaintiff is to a discussion of whether a criminal defendant's cognitive disabilities render a confession involuntary and whether a confession provided a basis for probable cause. *Id.* at 359. Plaintiff also cites *LoBiondo v. Schwartz*, 970 A.2d 1007, 1022 (2009). While the *LoBiondo* Court does state that malicious prosecution "provides a remedy for harm caused by the institution or continuation of a criminal action that is baseless," the case arose in a different context: it involved a malicious use of process claim, which is the civil counterpart to malicious prosecution, filed in response to a Strategic Lawsuits Against Public Participation ("SLAPP") suit, and a malicious prosecution counterclaim. *See generally id.* It did not involve a criminal proceeding in municipal court and provides no support for Plaintiff's argument that a sentence imposed pursuant to a municipal court conviction constitutes the kind of pre-trial deprivation of liberty actionable under a malicious prosecution claim. Plaintiff fairs no better with his citation to *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017). In *Manuel*, the Supreme Court held that a criminal defendant's "pretrial detention" was cognizable under the Fourth Amendment. *Id.* at 367–68. The case lends no support to Plaintiff's argument that his post-conviction sentence is also cognizable under the Fourth Amendment.

to the Law Division resulting in an acquittal would then have a viable malicious prosecution claim based on post-conviction penalties. Such a result would be incongruous with the fact that malicious prosecution claims are disfavored in New Jersey. *Land v. Helmer*, 843 F. Supp. 2d 547, 550 (D.N.J. 2012) ("Malicious prosecution is an avowedly disfavored cause of action." (citing *Stolisnki v. Pennypacker*, 772 F. Supp. 2d 626 (D.N.J. 2011) (cataloging the numerous expressions of disfavor))); *see also Smart v. Cnty. of Gloucester*, No. 20-12408, 2023 WL 4491400, at *22 (D.N.J. July 12, 2023) (citing *Penwag Prop. Co. v. Landau*, 388 A.2d 1265, 1266 (1978) ("New Jersey courts disfavor malicious prosecution claims because the courts do not want to deter reporting possible crimes or righting civil injuries.")). Accordingly, any fines or penalties imposed as a result of Plaintiff's municipal court convictions do not provide a basis to prove the requisite deprivation of liberty element for his malicious prosecution claim.

Thus, the Court must determine whether Plaintiff suffered a Fourth Amendment seizure *after* he was charged but *before* he was tried in municipal court. As noted above, pretrial custody and some onerous types of pretrial, non-custodial restrictions are cognizable forms of detention for a malicious prosecution claim. *DiBella*, 407 F.3d at 603.[6] Under the facts of this case, there are two events that Plaintiff appears to assert meet these criteria: (1) any time that Plaintiff remained in custody after his Complaint-Summons was issued but before he was released; and (2) the fact

---

[6] Other Circuit Courts have also found that "standard fare . . . run-of-the-mill conditions of pretrial release" do not constitute a Fourth Amendment seizure because they "do not fit comfortably within the recognized parameters of the term seizure. *Harrington v. City of Nashua*, 610 F.3d 24, 32 (1st Cir. 2010) (conditions that require a plaintiff to attend court proceedings, notify the court of any change in address, refrain from committing crimes and forbear consuming controlled substances or excessive alcohol do not constitute a seizure (cleaned up); *see also Kingsland v. City of Miami*, 382 F.3d 1220, 1236 (11th Cir. 2004), abrogated on other grounds by *Williams v. Aguirre*, 965 F.3d 1147, 1159 (11th Cir. 2020) (no circuits "have been willing to conclude that normal conditions of pretrial release constitute a 'continuing seizure' barring some significant, ongoing deprivation of liberty").

that his vehicle remained impounded after his Complaint-Summons was issued but before he was able to retrieve it.

### ii.    *Time in Custody Following Arrest*

Confusingly, without corroboration, and contrary to standard protocol in every New Jersey municipal police department, Plaintiff alleges he was detained "at least one hour after the initiation of charges against him" and that the "legal process" in this case "was written [] during or before [Plaintiff's] detention."[7] (SAC ¶¶ 65, 65 n.15.) According to the Holmdel Township Police Department Arrest Report, Plaintiff's "booking" occurred at 3:48 a.m. (Pl. Opp., Ex. G at 2.)[8] Plaintiff cites this report for the proposition that "based on the *text* of the 'booking checks' for [Plaintiff] . . . he was charged at *3:48 a.m.*" (Pl. Opp. at 34 (emphasis in original).) Thus, according to Plaintiff, the legal process began at 3:48 a.m. (*Id.*) Plaintiff further argues that Defendants may

---

[7] Pursuant to N.J. Ct. R. 7:2-1, summonses are generally issued on Complaint-Summons or Complaint-Warrant forms. The summons in this case was a Complaint-Summons. (*See* Def. MTD, Ex. I.) The standard protocol is that "[a] law enforcement officer making a custodial arrest without a Complaint-Warrant [] shall take the defendant to the police station where a complaint shall be immediately prepared." N.J. Ct. R. 7:3-1(c)(1). Once a Complaint-Summons has been prepared, or a judicial officer has determined that a summons shall issue, "the summons shall be served and the defendant shall be released after completion of post-arrest identification procedures required by law . . . ." N.J. Ct. R. 7:3-1(c)(3).

[8] Arrest reports are properly before this Court on a motion to dismiss as matters of public record. *See Harden v. City of Millville*, No. 17-5127, 2018 WL 2113268, at *3 (D.N.J. May 8, 2018) (considering an arrest report attached to defendants' motion to dismiss); *Kelly v. City of Newark*, No. 17-0498, 2018 WL 1378727, at *7 (D.N.J. Mar. 16, 2018) (considering an arrest report attached to plaintiffs' opposition to a motion to dismiss). Moreover, the basis of Plaintiff's malicious prosecution claim is that he was detained after legal process was initiated against him. While Plaintiff did not attach the arrest report to the Second Amended Complaint, the Court finds that the report was integral to Plaintiff's claim. *See Buck*, 452 F.3d at 260. Plaintiff concedes this point in his Brief in Opposition wherein he contends that his allegation that "he was charged . . . and held at least one hour after charges . . . .is based on the text" of this arrest report. (Pl. Opp. at 34). "[T]he justification for the integral documents exception is that it is not unfair to hold a plaintiff accountable for the contents of documents it must have used in framing its complaint, nor should a plaintiff be able to evade accountability for such documents simply by not attaching them to his complaint." *Schmidt v. Skolas*, 770 F.3d 241, 250 (3d Cir. 2014); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated where the plaintiff has actual notice and has relied upon these documents in framing the complaint." (cleaned up)). Such is the case here where Plaintiff admits that the arrest report was used in framing his Second Amended Complaint.

not, at the motion to dismiss stage, litigate whether Plaintiff was charged at this time. (*Id.*) The Court is not persuaded. While the Court must accept Plaintiff's *factual* allegations as true, the Court is not bound by Plaintiff's *legal* arguments at the motion to dismiss stage. *See Twombly*, 550 U.S. at 570 (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citation omitted)).

Whether or not a routine booking procedure constitutes the initiation of legal process is not a factual allegation; it is a legal conclusion. And indeed, an incorrect one. The commencement of the booking process is not the initiation of a legal proceeding. The charging document in this case was a "Uniform Traffic Ticket," also called a "Complaint-Summons." (*See* Def. MTD, Ex. I ("Complaint-Summons," "UTT"))[9]. The legal process was initiated not when Plaintiff was booked at the Holmdel police station, but rather when the summons was issued to Plaintiff. *See State v. Fisher*, 852 A.2d 1074, 1077 (2004) (explaining that a Uniform Traffic Ticket or "Complaint-Summons" is used to charge a defendant with a DWI); *see also* N.J. Ct. R. 7:2-1(b)(1) (explaining that the Uniform Traffic Ticket serves "as the complaint, summons or other process" for all traffic related offenses). The time at which the Complaint-Summons was signed and thus Plaintiff was charged is not clear from the documents before the Court; there is no discernable timestamp on the summons itself. (*See* Def. MTD, Ex. I.) What is clear is that Plaintiff was released on his own

---

[9] The Court may consider the Complaint-Summons as a matter or public record and an indisputably authentic document attached to Defendants' Motion to Dismiss upon which Plaintiff's malicious prosecution claim is based. *See Zedonis v. Lynch*, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) (criminal complaint is an indisputably authentic document attached to motion to dismiss); *Boyden v. Twp. of Upper Darby*, 5 F.Supp.3d 731, 734 (E.D. Pa. 2014) (same). Moreover, Plaintiff repeatedly references the summons in the Second Amended Complaint, and it is likewise integral to Plaintiff's claim. *See Buck*, 452 F.3d at 260.

recognizance to his son, Saif Elfar, at 4:53 a.m. (Def. MTD, Ex. J.)[10] It is virtually certain that Plaintiff was charged sometime after he was booked at 3:48 a.m. and before or at the time he was picked up by his son at 4:48 a.m. The Court finds that this *de minimis* period of detention is not a "seizure significant enough to constitute a Fourth Amendment violation." *DiBella*, 407 F.3d at 603; *see also Dinoia*, 2015 WL 6739114, at *3 (plaintiff who was arrested and detained for one (1) hour and five (5) minutes before being released on his own recognizance was not seized); *Moreno-Medina v. Toledo*, 458 F. App'x 4, 5–8 (1st Cir. 2012) (plaintiff who was detained for four (4) or five (5) hours before being required to post bond was not seized).

This conclusion is bolstered by the Third Circuit's opinion in *Penberth v. Krajnak*. 347 F. App'x 827, 829 (3d Cir. 2009). In *Penberth*, the district court determined that the plaintiff did not experience a deprivation of liberty sufficient for a malicious prosecution claim. *Penberth v. Krajnak*, No. 06-1023, 2008 WL 509174, at *19 (M.D. Pa. Feb. 21, 2008), *aff'd*, 347 F. App'x 827 (3d Cir. 2009). The *Penberth* plaintiff was charged with theft by unlawful taking and theft from a motor vehicle. *Id.* at *13. The plaintiff read in the newspaper that charges had been filed against him and opted to voluntarily surrender. *Id.* The plaintiff reported to the office of the District Justice where he remained for approximately thirty-five (35) to forty (40) minutes before he was released. *Id.* at *8, *13. The Third Circuit upheld the district court's determination that there was no deprivation of liberty, pointing out that the plaintiff was detained after charges had been filed against him for only thirty-five (35) to forty (40) minutes, did not have to post bail or communicate

---

[10] This information is reflected in the Computer-Aided Dispatch ("CAD") Report, which is also a matter of public record properly before the Court. *See Horne v. Crisostomo*, No. 06-3430, 2007 WL 2123701, at *4 (D.N.J. July 19, 2007) (police department investigation reports are public records).

with pretrial services, and had no travel or geographic restraints placed on him. *Penberth*, 347 F. App'x at 829.

According to the public record documents properly before the Court, Plaintiff was, if anything, detained for a similar amount of time after charges were filed against him as the *Penberth* plaintiff. Plaintiff again seems to be asking the Court to adopt an interpretation of the deprivation of liberty requirement that is too expansive—that any amount of time that Plaintiff remained at the Holmdel police station before his son could arrive to pick him up is cognizable for a malicious prosecution claim. The Court finds that such a result would conflict with Third Circuit guidance that malicious prosecution cases are reserved for "seizure[s] *significant* enough to constitute a Fourth Amendment violation." *DiBella*, 407 F.3d at 603 (emphasis added).

Moreover, Plaintiff's Second Amended Complaint fails to set forth any allegations that Plaintiff was detained *pursuant* to the Complaint-Summons and therefore there are no allegations that Plaintiff was seized *pursuant* to legal process. The Supreme Court of New Jersey has explained that Complaint-Summonses are not utilized for defendants who require pretrial detention— defendants "are always released" pursuant to Complaint-Summonses and directed to appear in court on a specific date. *Simmons v. Mercado*, 252 A.3d 995, 999 (2021). No charging document or judicial officer required Plaintiff to post bail in order to be released; he was released on his own recognizance, was subject to no pretrial travel restrictions, and was not required to report to pretrial services. Courts in this Circuit have found that such circumstances do not constitute cognizable seizures for malicious prosecution claims. *See Wiltz v. Middlesex Cnty. Off. of Prosecutor*, 249 F. App'x 944, 949 (3d Cir. 2007) (upholding a district court's dismissal of a malicious prosecution claim on the basis that a plaintiff who was arrested but not incarcerated and not required to post bond, maintain contact with pretrial services, or refrain from travel was not seized); *Walker v.*

*Heller*, No. 15-580, 2017 WL 4786557, at *9 (D.N.J. Oct. 24, 2017) (plaintiff who was arrested, issued a summons, and was not required to post bail or report to pretrial services was not seized); *Dinoia*, 2015 WL 6739114, at *3 (plaintiff who was arrested, detained for one (1) hour and five (5) minutes, issued a summons, and released on his own recognizance was not seized); *Roberts*, 72 F. Supp. 3d at 582 (plaintiffs who were charged, arraigned, released on their own recognizance, and not required to report to pretrial services were not seized even though their pretrial freedom to travel was subject to approval); *see also Moreno-Medina*, 458 F. App'x at 5–8 (a plaintiff who was detained for four (4) or five (5) hours, booked, and required to post a $10,0000 bond was not seized because no detention occurred after he posted bond even though two of his vehicles were seized along with all of the items in them).

### iii.    Vehicle Impoundment

The Court also notes that the fact that Plaintiff's vehicle was impounded when he was arrested, and remained impounded until he could pick it up, does not amount to a Fourth Amendment seizure consistent with the deprivation of liberty cognizable for a malicious prosecution claim. Nor is the fact that Plaintiff had to pay the towing fees associated with the impoundment. The Third Circuit has held that "legal fees, court costs, and interminable inconvenience[s]" are "insufficient to establish that [the plaintiff] was the victim of a malicious prosecution under the Fourth Amendment." *Mann v. Brenner*, 375 F. App'x 232, 237 (3d Cir. 2010) (citing *DiBella*, 407 F.3d at 603); *see also Moreno-Medina*, 458 F. App'x at 5–8 (concluding that a seizure did not occur even though plaintiff was arrested, required to post bond, and two of his vehicles were seized along with all of their contents).

In this case, Plaintiff has failed to allege that he was detained pursuant to the initiation of criminal charges, forced to post bond, subjected to travel restrictions, required to report to pretrial

services, or otherwise burdened with significant deprivation.[11] The fact that it may have taken a *de minimis* amount of time for Plaintiff to be released after his Complaint-Summons was signed and that he had to retrieve his vehicle are "standard fare." *See Harrington*, 610 F.3d at 32. The Court notes that part, or perhaps even most, of Plaintiff's hour-long stay in the Holmdel police station may well have been necessitated by virtue of the fact that Plaintiff's son was contacted to pick up Plaintiff between 4:00 and 5:00 in the morning.

Because Plaintiff's failure to allege a deprivation of liberty consistent with a Fourth Amendment seizure is fatal to his malicious prosecution claims, the Court need not consider Defendants' other bases for dismissal of these claims. *See Kerstetter v. Girard Borough*, No. 20-77, 2021 WL 37626, at *5 (W.D. Pa. Jan. 5, 2021) (dismissing malicious prosecution claim based on failure to allege a deprivation of liberty and declining to address remaining arguments); *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 248 (3d Cir. 2001) (failure to prove any four of the elements of a New Jersey malicious prosecution "denies the plaintiff a cause of action"). Accordingly, Defendants Motion to Dismiss as to Plaintiff's constitutional malicious prosecution claims is **GRANTED**.

### B. MONELL CLAIM

Having determined that Plaintiff's malicious prosecution claim fails, the Court now turns to Plaintiff's claim for municipal liability pursuant to Section 1983 and the NJCRA against Holmdel. A plaintiff may not hold a municipality liable for the constitutional violations of its police officers based on the theory of *respondeat superior*. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978). To establish municipal liability under *Monell*, a plaintiff must instead prove "the existence of a policy or custom that has resulted in a constitutional violation." *Groman v.*

---

[11] The Court reiterates that any post-conviction travel restrictions imposed as part of Plaintiff's municipal court sentence may not be considered in a malicious prosecution analysis.

*Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (citing *Monell*, 436 U.S. at 694–95). A government policy or custom can be established in two ways. First, policy can be made "when a decisionmaker possessing final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (cleaned up). Second, a custom is established when, though not authorized by law, practices of state officials are "so permanently and well-settled as to virtually constitute law." *Id.*

Even if a municipality's policy or custom is "not unconstitutional itself," *Monell* liability may still be established "when the policy or custom . . . is the 'moving force' behind the constitutional tort of one of [the municipality's] employees." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)). To establish *Monell* liability this way, a plaintiff must "demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407 (1997) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bryan Cnty.*, 520 U.S. at 410). Generally, to make out a deliberate indifference claim, a plaintiff needs to point to a pattern of underlying constitutional violations. *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004). Although possible, "proving deliberate indifference in the absence of such a pattern is a difficult task." *Id.*

To plead a failure-to-train claim, a plaintiff must ordinarily allege a "pattern of similar constitutional violations by untrained employees to demonstrate deliberate indifference." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (cleaned up). Deliberate indifference

occurs if (1) "municipal supervisors had contemporaneous knowledge of the offending incident or of a 'prior pattern of similar incidents,'" and (2) "the supervisors' action or inaction somehow communicated approval of the offending behavior." *Tobin v. Badamo*, 78 F. App'x 217, 219 (3d Cir. 2003) (quoting *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998)). An allegation of failure to train can be the basis for municipal liability, but these arise in "limited" circumstances because "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, [said] plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *City of Canton v. Harris*, 489 U.S. 378, 387, 392 (1989). A single constitutional violation can only provide the basis for a failure-to-train claim when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights" that inaction amounts to deliberate indifference. *Christopher v. Nestlerode*, 240 Fed. Appx. 481, 489 (3d Cir. 2007). Likewise, "[a] municipality may be liable for its failure to supervise only if it reflects a policy of deliberate indifference to constitutional rights." *Jewell v. Ridley Twp.*, 497 F. App'x 182, 186 (3d Cir. 2012) (citing *Montgomery*, 159 F.3d at 126–27).

For failure to train and supervise claims, a plaintiff must demonstrate "both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery*, 159 F.3d at 127. Constructive knowledge or a showing that a municipality "should have known" about the pattern of constitutional misconduct may be sufficient. *Forrest v. Parry*, 930 F.3d 93, 115 (3d Cir. 2019). Such constructive knowledge "may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of [their] official responsibilities the

[municipal policymakers] should have known of them." *Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 913 (3d Cir. 2003).

In support of his *Monell* claim, Plaintiff alleges that Holmdel has a pattern or practice of failing to review MVRs. (SAC ¶ 48; *see also* Pl. Opp. at 22–23.) Plaintiff contends that, because Sasso and Menosky muted the MVR in this case in violation of the MVR policy and because their violation was not caught, it follows that department supervisors either do not review MVRs or review MVRs and ignore violations of the policy. (SAC ¶ 48.) Plaintiff also alleges that Plaintiff's own review of twenty-eight (28) MVRs secured through a common law records request shows apparent improper muting of MVRs in "several" instances, although Plaintiff fails to provide a specific number of the alleged self-described "improper" mutings. (*Id.* ¶¶50–51.) Furthermore, Plaintiff alleges that the fact that Menosky was repeatedly recognized for his volume of DWI arrests should have caused the Holmdel Police Department to review his MVRs. (*Id.* ¶ 52.) Plaintiff also alleges that Holmdel has no adequate written training or guidance on the substantial diminution standard for DWIs based on marijuana consumption, the consent-to-search doctrine, and the plain view doctrine. This lack of training resulted in officers' confusion and conflation of these doctrines. (*Id.* ¶¶ 48, 62.)

Defendants argue that Plaintiffs' *Monell* claim hinges solely on the fact that Sasso and Menosky muted the MVR for fourteen (14) seconds. (Def. MTD at 41.) Defendants contend that Plaintiff's *Monell* claim fails because Holmdel's MVR policy permits officers to mute the microphone and that muting the MVR does not constitute deleting or obscuring evidence relating to Plaintiff's traffic stop; thus, muting the MVR is not a constitutional violation. (*Id.*) According to Defendants, because the Court should find that Defendants did not violate the Fourth Amendment through Plaintiff's malicious prosecution claim, and because the MVR policy allows

MVRs to be muted, there is no viable predicate upon which to base Plaintiff's claim for municipal liability. (*Id.*)

Defendants are correct that because the Court has found at this stage that Plaintiff has failed to allege a Fourth Amendment violation based on malicious prosecution, Plaintiff's malicious prosecution claim cannot serve as the basis for his *Monell* claim. Municipal liability under Section 1983 requires an underlying constitutional violation. *See Monell*, 436 U.S. at 690–91. "[I]f there is no violation in the first place, there can be no derivative municipal claim." *Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 238 n. 15 (3d Cir. 2013) (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *see also Rodriguez v. Panarello*, 119 F. Supp. 3d 331, 343 (E.D. Pa. 2015) ("Because I found there was no deprivation of Plaintiff's constitutional rights, there can be no municipal liability."). Thus, the Court must determine whether Plaintiff has otherwise sufficiently pled a claim for municipal liability.

Plaintiff appears to be alleging a failure-to-supervise claim pertaining to the muting of MVRs—namely, that Holmdel fails to supervise its police officers by failing to review MVRs to determine whether improper muting is occurring. Plaintiff alleges that Holmdel should have reviewed the MVRs based on Menosky's volume of DWI arrests and because Plaintiff's own review of twenty-eight MVRs that he selected as likely to show improper muting showed apparent muting in "several" but, again, unquantified instances. Even presuming that muting MVRs under the circumstances described in this case violated Plaintiff's constitutional rights, Plaintiff has not adequately plead municipal liability based on this violation.

Plaintiff does not allege that Holmdel had knowledge of a prior pattern of similar constitutional violations wherein Holmdel's lack of supervision communicated a message of approval of this practice. Plaintiff appears to be alleging that Holmdel *should have known* there

was a pattern of constitutional violations based on improper muting. There is nothing nefarious about the fact that Menosky secured a high volume of DWI arrests such that it would put Holmdel on notice that he was committing constitutional violations. Nor does the fact that Plaintiff selectively identified a discrete number of instances wherein, based on Plaintiff's own assessment, MVRs were improperly muted demonstrate the kind of widespread or flagrant practices necessary to evidence constructive knowledge for a failure-to-supervise claim. Plaintiff's allegations fail at this stage to show that constitutional violations pertaining to the use of MVRs were so rampant among Holmdel police officers to meet the stringent deliberate indifference standard.

Plaintiff's failure-to-train claims pertaining to the probable cause standard for marijuana DWIs, the consent-to-search doctrine, and the plain view doctrine fair no better. Again assuming *arguendo* that Sasso and Menosky violated Plaintiff's constitutional rights by (1) arresting him for a marijuana DWI even though there was no evidence of substantial diminution of Plaintiff's mental faculties or physical capabilities, (2) failing to properly seek consent to search, and (3) violating the plain view doctrine, these claims do not form a basis for municipal liability. Plaintiff does not allege that Holmdel had knowledge of the offending incident nor does Plaintiff allege a prior pattern of similar incidents or constitutional misconduct. Rather, these claims appear to be based solely on the subject single incident. As noted above, a single incident can provide the basis for municipal liability in cases where the need for more or different training is so obvious and so likely to result in a constitutional violation, that the municipality's inaction amounts to deliberate indifference. Based on the facts alleged, the Court finds this is not such an obvious case. Indeed, two separate municipal court judges found no constitutional issue with Sasso or Menosky's conduct before the Law Division determined they had violated Plaintiff's constitutional rights during the traffic stop at issue. The Court finds that Holmdel cannot be said to have been

deliberately indifferent to Plaintiff's constitutional rights based on this incident alone. Accordingly, Defendants Motion to Dismiss as to Plaintiff's municipal liability claim is **GRANTED**.

### C. COMMON LAW MALICIOUS PROSECUTION

Plaintiff's remaining claim is for malicious prosecution under New Jersey common law. To adjudicate a case, a federal court must have subject matter jurisdiction based on either federal question or diversity. 28 U.S.C. §§ 1331, 1332; *see also Rockefeller v. Comcast Corp.*, 424 F. App'x 82, 83 (3d Cir. 2011).[12] Here, the Court exercised federal question jurisdiction based on Plaintiffs' claims for relief under the United States Constitution. *See Rockefeller*, 424 F. App'x at 83. While the Court has supplemental jurisdiction over Plaintiff's common law claim under 28 U.S.C. § 1367(a), subsection (c) gives district courts discretion to decline to hear claims over which they otherwise would have supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "The general approach is for a district court to . . . hold that supplemental jurisdiction should not be exercised where there is no longer any basis for original jurisdiction." *Shaffer v. Twp. of Franklin*, No. 09-347, 2010 WL 715349, at *1 (D.N.J. Mar. 1, 2010); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (encouraging federal courts to avoid "[n]eedless decisions of state law"); *Markowitz v. Ne. Land Co.*, 906 F.2d 100, 106 (3d Cir. 1990) ("[T]he rule within this Circuit is that once all

---

[12] While not raised by the parties, district courts have an "ever-present obligation to satisfy themselves of their subject matter jurisdiction." *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995). A court may thus raise the issue of its own subject matter jurisdiction *sua sponte* at any time. *Id.*

claims with an independent basis of federal jurisdiction have been dismissed the case no longer belongs in federal court.")

As discussed above, Defendants' Motion to Dismiss is granted as to Plaintiff's claims brought under the United States Constitution. These federal claims formed the basis of the Court's subject-matter jurisdiction to hear this matter, and Plaintiff's common law claim was only properly before this Court pursuant to its supplemental jurisdiction over related claims. Because no federal claims remain, pursuant to § 1367(c)(3), this Court declines to exercise supplemental jurisdiction over the common law claim and accordingly, will not address the parties' arguments as to Plaintiffs' common law malicious prosecution claim at this stage.

IV.    **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**. Plaintiffs' claims are **DISMISSED** without prejudice. Plaintiffs may file an amended pleading that cures the deficiencies identified in this Opinion within thirty (30) days of the date of this Opinion and accompanying Order. An appropriate Order will follow.

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: February 5, 2024