NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

NEDAL ELFAR,

      Plaintiff,

          v.

TOWNSHIP OF HOLMDEL, MATTHEW
MENOSKY, MICHAEL SASSO, and JOHN
MIODUSZEWSKI,

      Defendants.

---

Civil Action No. 22-5367 (RK) (JBD)

**<u>OPINION</u>**

---

**<u>KIRSCH, District Judge</u>**

**THIS MATTER** comes before the Court upon a Motion to Dismiss the Second Amended Complaint (ECF No. 58 ("SAC")) under Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendants Township of Holmdel ("Holmdel"), Matthew Menosky ("Menosky"), Michael Sasso ("Sasso"), and John Mioduszewski ("Mioduszewski") (collectively "Defendants"). (ECF No. 66.) Plaintiff Nedal Elfar ("Plaintiff" or "Elfar") opposed the Motion (ECF No. 68), and Defendants replied (ECF No. 66-5). After the Third Circuit's decision in *Elfar v. Township of Holmdel* ("*Elfar II*"), No. 24-1353, 2025 WL 671112 (3d Cir. Mar. 3, 2025), the parties submitted supplemental Motion to Dismiss briefing. (ECF No 85-2 ("Defs. Supp. Br."); ECF No. 86-1 ("Pl. Supp. Opp."); ECF No. 87-2 ("Defs. Supp. Reply").) The Court has carefully considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

## I.    **BACKGROUND**[1]

The Court provided a detailed recitation of the allegations in the SAC and the procedural history of Plaintiff's federal and state court proceedings in its original Motion to Dismiss Opinion and incorporates that recitation fully herein. *Elfar v. Twp. of Holmdel* ("*Elfar I*"), No. 22-5367, 2024 WL 415691, at *1–5 (D.N.J. Feb. 5, 2024). To the extent that this Court relies on additional facts and subsequent procedural history, the Court provides that information below.[2]

To summarize Plaintiffs' allegations, on July 4, 2016, at approximately 3:00 a.m., Plaintiff was stopped while driving in Holmdel, New Jersey by two Holmdel police officers, Menosky and Sasso, for speeding and failing to disengage his high beams. (SAC ¶ 11.) Menosky and Sasso's

---

[1] Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[2] The parties dispute to what extent this Court may rely on documents outside of the SAC in assessing probable cause. Defendants argue that the investigative reports of Menosky and Sasso and their trial testimony are integral to the SAC and, therefore, the Court may consider them. (Defs. Supp. Br. at 8–9.) Plaintiff argues that while the Court may rely on statements in these documents, those statements cannot, at this stage, be relied on for their truth. (Pl. Supp. Opp. at 8–11.) Plaintiff asserts that the Court may consider the "'*text*' of the documents to determine whether they support the allegations *as Mr. Elfar has pleaded them*; it cannot consider the text *true* if Mr. Elfar alleges that contrary." (*Id*. at 10 (emphasis in original).) The Court is tasked with determining the sufficiency of Plaintiff's allegations in the SAC and must, at this stage, take Plaintiff's allegations as true, drawing every inference in his favor. With that being said, Plaintiff does directly rely on Menosky and Sasso's arrest reports and trial testimony in the SAC. (*E.g.*, SAC ¶¶ 1, 14, 17, 18, 24, 27–28, 35–37, 39.) Outside of the SAC, the Court may consider at the motion to dismiss stage "any document integral to or relied upon in the complaint." *Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 299 n.2 (D.N.J. 2019) (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)). Thus, the Court will take into consideration Menosky and Sasso's statements in their narrative reports and trial testimony. However, the Court will not simply accept as true the statements made in those reports or in any document submitted by Defendants at this stage. The Court will consider the full factual record when it is appropriately before the Court on a Rule 56 motion.

Regarding the New Jersey Superior Court's opinion overturning Plaintiff's municipal court conviction, the Court declines to consider that court's findings at this stage. The Court already rejected Plaintiff's argument that the New Jersey Superior Court's findings regarding the unconstitutionality of Plaintiff's search, arrest, and prosecution precluded Defendants from contesting the same issues in federal court. *Elfar I*, 2024 WL 415691, at *4. The Third Circuit affirmed that holding. *Elfar II*, 2025 WL 671112, at *1. Thus, it is this Court's view that, apart from the fact of Plaintiff's acquittal, the New Jersey Superior Court's findings are irrelevant to Defendants' Motion to Dismiss. To the extent Plaintiff disagrees, the parties will have an opportunity to fully brief this issue at the summary judgment stage or in pretrial motions *in limine*.

police vehicle was equipped with a dashcam and microphone, known as a Mobile Video Recording system ("MVR"),[3] which was engaged at the time of the stop. (*Id.* ¶ 12.) Sasso stated that he activated the "Stalker Radar" which read that Plaintiff's vehicle was traveling 50 miles per hour in a 40-mile-per-hour zone. (ECF No. 85-1 at 78–79 ("Sasso Report") at 78; *see also* ECF No. 90 ("MVR Recording") at 2:55:55–2:55:59.) Sasso also reported that, as the vehicle passed, Plaintiff failed to turn off his high beams. (Sasso Report at 78; *see also* MVR Recording at 2:55:59–2:56:04.)[4] Sasso stated that when he approached the driver-side window, he had to ask Plaintiff to "turn his music down." (Sasso Report at 78; MVR Recording at 2:54:50–2:54:53.) Sasso reported that Plaintiff seemed nervous, and, on the recorded MVR, Plaintiff clearly stated: "I really would appreciate it if you give me a break, I really do realize I was going fast." (Sasso Report at 78; MVR Recording at 2:56:39–2:56:49.)

Sasso stated in his report that when first speaking with Plaintiff after approaching the vehicle, he "detected the odor of burnt marijuana." (Sasso Report at 78.) He then questioned Plaintiff about whether he had been drinking. (SAC ¶ 13.) Menosky stated that while Sasso spoke with Plaintiff, he stood at the open passenger side window and detected the odor of burnt marijuana emanating from the interior of the vehicle. (ECF No. 85-1 at 81–82 ("Menosky Report") at 81.) Menosky and Sasso also observed that Plaintiff's eyes were "bloodshot and glassy" with "droopy

---

[3] Apart from statements made by the individuals on the MVR video, the Court declines, at this stage, to consider any aspect of the video that would necessarily require the Court to make factual findings regarding what is depicted. Such an assessment is not appropriate on a motion to dismiss. *Johnson v. Dep't of L. & Pub. Safety*, No. 03-1538, 2007 WL 9797654, at *5 (D.N.J. Mar. 29, 2007) ("The Court appreciates the Defendants' argument that one need only look at the videotape of the incident to rule in favor of the officers in this case. That task, however, is within the province of the jury, as is the charge of judging the credibility of the witnesses in conjunction with interpreting the events shown on the tape.").

[4] At trial, the parties "stipulated to the reason for the stop," which the Court can only conclude constituted Plaintiff's admission that the reasons for the stop were speeding and failure to turn off his high beams. (ECF No. 88 ("Feb. 13, 2017 Tr.") at 9:16–19.) This is the only reasonable conclusion as Plaintiff was adjudicated *twice* for speeding in both trials by separate Municipal Court judges. (ECF No. 66-3 ("Dec. 14, 2018 Tr.") at 15:18–20, 30:9–16.)

eyelids" and "marked reddening of the conjunctiva." (Sasso Report at 78; Menosky Report at 81.) Menosky then noticed a pill bottle in the back of Plaintiff's vehicle, asked Plaintiff if he could inspect the pill bottle, and Plaintiff provided it to him. (SAC ¶¶ 14–15.) Menosky opened the pill bottle, detected marijuana inside, and ordered Plaintiff to exit the vehicle. (*Id*. ¶ 15.)

After Plaintiff exited his vehicle, Sasso searched the backseat and allegedly found a metal Altoids box which contained a lighter and a green metallic pipe with burnt vegetation. (Sasso Report at 78.) Sasso asked Plaintiff if there was any other marijuana in the car to which Plaintiff replied that there was another pill bottle in the trunk. (Sasso Report at 78; *see also* Feb. 13, 2017 Tr. at 11:24–12:15.) Sasso then asked Plaintiff to open his trunk and hand him the other pill bottle, and Plaintiff did so. (*Id*.)

Menosky then conducted a field sobriety test on Plaintiff. (SAC ¶ 16.) Plaintiff completed "the horizontal gaze nystagmus test, the vertical gaze nystagmus test, the lack of convergence test, the modified Romberg balance test, the walk and turn test, and the one leg stand test." (Feb. 13, 2017 Tr. at 49:18–57:6; *see also* Menosky Report 81–82.) Plaintiff alleges that he passed the field sobriety test. (SAC ¶ 16.) He asserts that headlights from an oncoming car distracted him during the one leg stand and that Menosky had Plaintiff stand on his leg with a preexisting knee injury. (*Id*. ¶ 26.) Sasso and Menosky both state that Menosky determined from the field sobriety test that Plaintiff had been under the influence of a controlled substance, finding that during the horizontal nystagmus test Plaintiff "sway[ed] from front to back and side to side"; his right eye converged when Menosky moved his stimulus pen toward the bridge of Plaintiff's nose but his left eye did not; Plaintiff estimated the passage of thirty seconds in 37 seconds; Plaintiff had a greenish brown coating on his tongue; and Plaintiff had difficulty maintaining his balance during the one leg stand. (Sasso Report at 78; Menosky Report at 81–82.)

After conducting the field sobriety test, Sasso muted the MVR for 14 seconds after Menosky asked him "are you on?," pointing his flashlight at Sasso's belt where there is a button to mute the microphone on the MVR. (SAC ¶ 17; MVR Recording at 3:11:14–3:11:28.) Plaintiff alleges that Menosky and Sasso discussed whether probable cause existed to arrest Plaintiff while the MVR was muted. (SAC ¶ 18.) This included discussion of Menosky's "observations" and "findings" as to Plaintiff's performance on the field sobriety test. (*Id.* ¶¶ 35–37.) Because this conversation is not reflected elsewhere on the un-muted MVR, Plaintiff alleges that the discussion must have taken place during the time that the MVR was muted. (*Id.* ¶ 18.) According to Plaintiff, Holmdel police officers routinely improperly mute the MVR to confer about probable cause for driving-while-impaired and related offenses. (*Id.*)

After this conversation between Menosky and Sasso, Sasso arrested Plaintiff for driving while intoxicated and possession of marijuana. (Sasso Report at 78; Menosky Report at 82.) The State subsequently charged Plaintiff with eight offenses: N.J. Stat. Ann. § 39:4-50 (driving while intoxicated), N.J. Stat. Ann. § 39:4-96 (reckless driving), N.J. Stat. Ann. § 39:4-98.10 (Antwan's Law), N.J. Stat. Ann. § 39:3-60 (use of multiple-beam road lighting), N.J. Stat. Ann. § 39:4-49.1 (drug possession by motor vehicle operator), N.J. Stat. Ann. § 2C:35-10a(4) (possession of 50 grams or less of marijuana), N.J. Stat. Ann. § 2C:36-2 (use or possession with intent to use, disorderly persons offense), and N.J. Stat. Ann. § 2C:35-10b (possession, use, or being under the influence, or failure to make lawful disposition). (ECF No. 66-3 ("Complaint-Summons") at 38–45.)

In 2017 and 2018, Plaintiff was twice tried in Holmdel municipal court. (SAC ¶¶ 22, 34.) The first municipal court found Plaintiff guilty of N.J. Stat. Ann. § 39:4-50 (driving while intoxicated), N.J. Stat. Ann. § 39:4-49.1 (drug possession by motor vehicle operator), N.J. Stat.

Ann. § 2C:35-10a(4) (possession of 50 grams or less of marijuana), and N.J. Stat. Ann. § 39:4-98.14 (speeding). (Dec. 14, 2018 Tr. at 14:21–15:22.) After Plaintiff's motion for a new trial was granted, Plaintiff was tried by a different municipal court judge and convicted of N.J. Stat. Ann. § 39:4-50 (driving while intoxicated), N.J. Stat. Ann. § 39:4-49.1 (drug possession by motor vehicle operator), N.J. Stat. Ann. § 39:4-98.14 (speeding), and N.J. Stat. Ann. § 2C:35-10a(4) (possession of 50 grams or less of marijuana). (Dec. 14, 2018 at 29:14–33:5; SAC ¶¶ 33–34.)[5]

In August 2022, on appeal, the New Jersey Superior Court adjudged Plaintiff not guilty on all charges. (ECF No. 32-4 ("N.J. Super. Ct. Opinion") at 20–23.)

On September 1, 2022, Plaintiff filed the instant federal suit against Defendants. (ECF No. 1.) On July 31, 2023, Plaintiff filed the SAC, the third complaint, which is now the operative pleading. In Count One, Plaintiff brings claims against Menosky, Sasso, and Mioduszewski under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA") for malicious prosecution in violation of the Fourth Amendment of the United States Constitution and its New Jersey analog. (SAC ¶¶ 63–69.) Plaintiff alleges that he was seized within the meaning of the Fourth Amendment in the following ways: (1) he was arrested; (2) his vehicle was impounded; (3) he was held at the police station after he was charged; (4) he was required to appear in municipal court for his trials; and (5) following his initial municipal court trial, his license was suspended and he was required to complete a DWI course before a consent order was issued wherein he was subjected to certain driving restrictions. *Elfar I*, No. 22-5367, 2024 WL 415691, at *7 (D.N.J. Feb. 5, 2024). In Count Two, Plaintiff brings claims against Holmdel under § 1983 and the NJCRA for municipal liability based on a pattern and practice of constitutional violations, including (1) failing to review MVRs

---

[5] Before his second trial, Plaintiff alleges that the municipal prosecutor informed his counsel that Mioduszewski, Holmdel's police chief, spoke to the judge *ex parte* and the municipal prosecutor was, therefore, unable to dismiss the driving-while-impaired charge against Plaintiff. (SAC ¶ 32.)

or ignoring violations of the MVR policy and (2) lacking adequate written training or guidance on the driving-while-impaired substantial diminution standard based on the consumption of marijuana, the consent-to-search doctrine, and the plain view doctrine. (SAC ¶¶ 48, 50–52, 62, 70–73.) In Count Three, Plaintiff brings a common law claim for malicious prosecution. (*Id.* ¶¶ 74–78.)

In September 2023, Defendants filed a Motion to Dismiss the SAC (ECF No. 66), which this Court granted in February 2024, dismissing without prejudice Plaintiff's claims. *Elfar I*, 2024 WL 415691, at *14. The Court reasoned that Plaintiff failed to allege a deprivation of liberty consistent with a Fourth Amendment seizure and, therefore, could not prove a malicious prosecution claim. *Id.* at *6–11. The Court explained that Plaintiff's initial conviction had not been vacated pending retrial, which rendered any deprivations of liberty that Plaintiff suffered during retrial "post-conviction restrictions" and thus not a seizure under the Fourth Amendment. *Id.* at *8. The Court then turned to whether Plaintiff suffered a Fourth Amendment seizure after he was charged but before he was tried in municipal court. *Id.* at *9. The Court focused on Plaintiff's remaining at police headquarters for about an hour while being processed (SAC ¶ 65)[6] and his vehicle remaining impounded after his Complaint-Summons was issued, concluding that those circumstances failed to constitute a seizure under the Fourth Amendment. *Elfar I*, 2024 WL 415691, at *9–11. The Court also dismissed without prejudice Plaintiff's § 1983 municipal liability claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), reasoning that because Plaintiff failed to allege a Fourth Amendment violation, he therefore could not make out a

---

[6] During the alleged hour, Sasso reported that Plaintiff was placed in the processing room for a twenty-minute observation period beginning at 3:35 a.m. (Sasso Report at 79.) Plaintiff also submitted to an Alcotest, which produced a 0.00 percent blood alcohol level. (*Id.*) The hour at police headquarters may have also included the time that Plaintiff waited for his son to pick him up in the very early hours of the morning (*id.*), presumably between 4:00 and 5:00 a.m.

municipal liability claim against Holmdel. *Id*. at *13. Nor could he support a municipal liability claim based on a failure to supervise or failure to train. *Id*. Finally, the Court declined to exercise supplemental jurisdiction over Plaintiff's common law malicious prosecution claim. *Id*. at *14.

Instead of amending the SAC, which the Court had permitted in its Order (ECF No. 70), Plaintiff appealed the Court's original Motion to Dismiss decision to the United States Court of Appeals for the Third Circuit. (ECF No. 71.) On March 3, 2025, the Third Circuit reversed the Court's grant of Defendants' Motion to Dismiss. *Elfar II*, 2025 WL 671112, at *1. The Circuit reasoned that the procedural history of Plaintiff's criminal case was "uniquely murky," but, construing the SAC in the light most favorable to Plaintiff at this preliminary Rule 12 posture, the Third Circuit ultimately "assume[d] his conviction was vacated pending retrial." *Id*. As a result, the Third Circuit concluded that Plaintiff had adequately pled a seizure under the Fourth Amendment to support a malicious prosecution claim. *Id*. at *4–5. The Circuit then remanded the following issues for this Court's consideration: (1) whether Plaintiff has sufficiently pled malicious prosecution's other elements, (2) if he has, whether malicious prosecution might serve as the basis for his municipal liability claim, and (3) based on the answers to these questions, whether the Court should exercise supplemental jurisdiction over Plaintiff's common law malicious prosecution claim. *Id*. at *5.

## II.    <u>LEGAL STANDARD</u>

For a complaint to survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must contain "sufficient factual matter" to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id*. When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023). The court accepts all allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III.    DISCUSSION

The Third Circuit remanded this case for the Court to consider three issues: (1) whether Elfar has sufficiently pled malicious prosecution's other elements (apart from whether Elfar has adequately pled a seizure under the Fourth Amendment), (2) if he has, whether malicious prosecution might serve as the basis for his municipal liability claim, and (3) based on the answers to these questions, whether the court should exercise supplemental jurisdiction over Elfar's

common law malicious prosecution claim. *Elfar II*, 2025 WL 671112, at *5. The Court addresses each of these issues in turn below.

### A. SECTION 1983 MALICIOUS PROSECUTION

Plaintiff brings malicious prosecution claims premised on the United States and New Jersey Constitutions pursuant to 42 U.S.C. § 1983 and the NJCRA, respectively (Count One). To state a claim for malicious prosecution in violation of the Fourth Amendment of the United States Constitution, a plaintiff must show: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003); *Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016).

The analysis for a New Jersey constitutional malicious prosecution claim is the same as a federal constitutional claim. *See Estate of Martin v. U.S. Marshals Serv. Agents*, 649 F. App'x 239, 245 n.4 (3d Cir. 2016) (holding that "it appears undisputed that [p]laintiffs' claims under the New Jersey Constitution and the New Jersey Civil Rights Act trigger the same legal elements and principles as . . . [the] federal causes of action [under Section 1983]"); *Lucia v. Carroll*, No. 12–3787, 2014 WL 1767527, at *5 (D.N.J. May 2, 2014) (finding that the analysis for plaintiff's Article 1, Paragraph 7 of the New Jersey Constitution malicious prosecution claim was the same as its Section 1983 claims). Accordingly, the Court will apply the same standard to Plaintiff's malicious prosecution claims brought under the United States and New Jersey Constitutions.

As the Third Circuit held, Plaintiff has plausibly pled a seizure under the Fourth Amendment, and the Court now focuses its analysis on the other elements of malicious

prosecution. *Elfar II*, 2025 WL 671112, at *1. In particular, Defendants argue that Plaintiff has failed to plausibly plead the third and fourth elements of malicious prosecution—probable cause and malice. (Defs. Supp. Br. at 10–24; Defs. Supp. Reply at 14–15.)

1. Probable Cause

To succeed on a Fourth Amendment malicious prosecution claim under § 1983, "a plaintiff must show that a government official charged him without probable cause, leading to an unreasonable seizure of his person." *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024). Courts need to separately analyze probable cause for each of the charges claimed to have been maliciously prosecuted. *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007). "A finding of probable cause is based on the totality of the circumstances." *United States v. Thornton*, 559 F. App'x 176, 179 (3d Cir. 2014). "To find probable cause to search, there needs to be a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (internal quotation marks omitted). "[P]robable cause to arrest is legally sufficient when a reasonable person would believe an offense has been or is being committed by the person to be arrested." *Ginter v. Skahill*, 298 F. App'x 161, 164 (3d Cir. 2008) (internal quotation marks omitted); *Mills v. Golden Nugget Atlantic City, LLC*, No. 19-19610, 2021 WL 3667076, at *21 (D.N.J. Aug. 18, 2021) ("New Jersey has described probable cause as 'a well-grounded suspicion that a crime has been or is being committed' and exists where the facts and circumstances within the arresting officer's knowledge at the time of arrest are sufficient to believe an offense has been committed.") (citing *Brunson v. Affinity Fed. Credit Union*, 972 A.2d 1112, 1121–22 (N.J. 2009)). In a case with multiple charges, probable cause as to one charge does not insulate the official from a malicious prosecution claim if other charges were initiated without probable cause. *Chiaverini*, 602 U.S. at 558; *see also Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 302 (3d Cir. 2024)

("[P]robable cause on one charge does not foreclose a malicious prosecution cause of action based on additional charges for which there was no probable cause." (internal quotation marks omitted)).

Here, the Court must assess whether the totality of circumstances during Plaintiff's traffic stop created probable cause for the prosecution of Plaintiff. As the Supreme Court of the United States recently instructed in *Chiaverini*, Plaintiff's malicious prosecution claim is not barred if some of the charges against him were lawfully brought as long as one of the charges was initiated without probable cause. 602 U.S. at 558. The State charged Plaintiff with eight offenses: N.J. Stat. Ann. § 39:4-50 (driving while intoxicated), N.J. Stat. Ann. § 39:4-96 (reckless driving), N.J. Stat. Ann. § 39:4-98.10 (Antwan's Law), N.J. Stat. Ann. § 39:3-60 (use of multiple-beam road lighting), N.J. Stat. Ann. § 39:4-49.1 (drug possession by motor vehicle operator), N.J. Stat. Ann. § 2C:35-10a(4) (possession of 50 grams or less of marijuana), N.J. Stat. Ann. § 2C:36-2 (use or possession with intent to use, disorderly persons offense), and N.J. Stat. Ann. § 2C:35-10b (possession, use, or being under the influence, or failure to make lawful disposition). (Complaint-Summons at 38–45.) While Plaintiff appears to focus his probable cause allegations and the arguments in his Supplemental Opposition on the driving-while-impaired charge, he does assert generally that his traffic stop, arrest, and prosecution were all without probable cause. (*Id.* ¶¶ 57, 66.) Neither party argues probable cause on a charge-by-charge basis for all eight charges. However, Plaintiff can continue to pursue his malicious prosecution claim if he has plausibly pled lack of probable cause for at least one of his charges. *Chiaverini*, 602 U.S. at 558. Thus, like Plaintiff, the Court focuses its analysis on whether the totality of the circumstances of Plaintiff's traffic stop created probable cause for his driving-while-impaired charge.[7]

---

[7] Because neither party argues probable cause on a charge-by-charge basis, no party has briefed the follow-up question identified in *Chiaverini*—whether the baseless charge caused the requisite seizure. 602 U.S. at 558, 564 ("[A] Fourth Amendment malicious-prosecution suit depends not just on an unsupported charge, but on that charge's causing a seizure."). Nor have they made arguments regarding the test for causation in

i.  *Smell of Marijuana*

The Court looks first to the purported smell of marijuana in Plaintiff's vehicle, as the smell of marijuana alone creates probable cause for a search. *United States v. Jackson*, 682 F. App'x 86, 88 (3d Cir. 2017) ("[S]o long as the smell of marijuana can be particularized to a specific person or place, it is sufficient to establish probable cause."); *see also St. Martin v. W. Windsor Twp. Police Dep't*, 753 F. Supp. 3d 369, 387 (D.N.J. 2024) (finding under New Jersey law that "[i]t is well established that the smell of marijuana creates probable cause for a search"). Sasso stated in his report that when first speaking with Plaintiff after approaching the vehicle, he "detected the odor of burnt marijuana." (Sasso Report at 78.) Menosky states that while Sasso spoke with Plaintiff, he stood at the open passenger side window and detected the odor of burnt marijuana emanating from the interior of the vehicle. (Menosky Report at 81.)

---

this context. The Supreme Court introduced several tests for consideration but left the question of which one to apply "for another day":

> Chiaverini's test is the easiest to satisfy. On his view, when both valid and invalid charges are brought before a judge for a probable cause determination, the warrant the judge issues is irretrievably tainted; so any detention depending on that warrant is the result of the invalid charge. The United States disagrees, arguing for the use of a but-for test to discover whether the invalid charge, apart from the valid ones, caused a detention. The question then would be whether the judge in fact [would] have authorized the detention had the invalid charge not been present. And finally, the officers urge a still stricter test. In their view, the question is whether the judge, absent the invalid charge, could have legally authorized the detention—regardless of what he really would have done.

*Id*. at 558, 564–565 (cleaned up). No Third Circuit decision or District Court opinion in this Circuit has yet addressed such a question. The Court will not seek to resolve that issue here, especially without any input from the parties. The Court notes that neither party disputes that Plaintiff was arrested for driving while intoxicated and possession of marijuana. However, without any argument from Defendants that the driving-while-intoxicated charge did not cause Plaintiff's seizure, the Court will allow Plaintiff's § 1983 malicious prosecution claim to proceed if he has plausibly pled lack of probable cause as to the driving-while-intoxicated charge.

While Plaintiff acknowledges in the SAC that Sasso reported smelling "burnt marijuana," (SAC ¶ 13), he alleges that "there is no objective evidence" that these statements are true because "Sasso's and Menosky's first contact with Mr. Elfar was entirely inconsistent with smelling burnt marijuana." (*Id*.) Plaintiff points out that Sasso asked Plaintiff if he had been drinking on the MVR, not smoking marijuana; Sasso failed to immediately remove Plaintiff from the vehicle after allegedly smelling marijuana, although the smell of marijuana permitted him to do so; and, at trial, although Menosky testified that he had determined the "'influence of cannabis' after [Plaintiff's] field sobriety test," he inconsistently testified that he "'wanted to get [Plaintiff] back to the station and get him on the Alcotest,' *i.e.* the test to measure alcohol impairment." (*Id*. ¶¶ 13, 27.) Accordingly, at this early stage, the Court finds that Sasso and Menosky's statements that they smelled marijuana and therefore possessed probable cause to search Plaintiff's vehicle are in dispute.

        ii.   *Bloodshot Eyes, Pill Bottles of Marijuana, and a Field Sobriety Test*

Accepting as true that Sasso and Menosky did not smell burnt marijuana, which on its own would have created probable cause to search Plaintiff's vehicle, the Court focuses on the totality of the other circumstances that may have given rise to probable cause for Plaintiff's prosecution.

Sasso and Menosky stated that they observed that Plaintiff's eyes were "bloodshot and glassy" with "droopy eyelids" and "marked reddening of the conjunctiva." (Sasso Report at 78; Menosky Report at 81.) Plaintiff does not expressly identify these statements in the SAC. Nor does he directly dispute them. However, he does allege that when Sasso and Menosky first approached Plaintiff, they asked him if he was drinking, not smoking marijuana. (SAC ¶ 13.) Menosky also admitted at trial that Plaintiff's bloodshot eyes could be a sign that he was tired. (Feb. 13, 2017 Tr. 66:10–24; *see also id*. ¶ 25.)

14

In addition, before Menosky and Sasso ordered Plaintiff to exit his vehicle, Menosky observed a pill bottle in the backseat. (SAC ¶ 14.) Plaintiff alleges that the pill bottle did not have its label removed or "anything else suspicious" about it. (*Id*.) Menosky asked Plaintiff if he could inspect the pill bottle, and Plaintiff provided it to him. (*Id*. ¶ 15.) Menosky opened the pill bottle and detected marijuana inside. (*Id*.) Sasso also asked Plaintiff if there was any other marijuana in the car to which he replied that there was another pill bottle in the trunk. (Sasso Report at 78; *see also* Feb. 13, 2017 Tr. 11:24–12:15.) Sasso then asked Plaintiff to open his trunk and hand him the other pill bottle, and Plaintiff did so. (*Id*.) Plaintiff alleges that Menosky failed to provide Plaintiff with a "consent-to-search form" or "advise him that he could decline the search" before asking Plaintiff to inspect the pill bottles, rendering Menosky's search of the pill bottles unlawful. (SAC ¶ 15.)

Under the Fourth Amendment, "one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *United States v. Lockett*, 406 F.3d 207, 211 (3d Cir. 2005) (internal quotation marks omitted). An individual may provide consent to search without probable cause or a warrant even if that consent is "given unintentionally and without knowledge of the right to refuse consent." *E.g.*, *id*. In other words, under the Fourth Amendment, "the police are not required to warn an individual of the right to refuse consent" before seeking such consent. *Id*.; *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 231–32 (1973) (finding it unnecessary to a voluntary consent to a search that the police, before eliciting consent, advise the subject of the search of his right to refuse consent).

However, the New Jersey Supreme Court imposes a different requirement in this context. Under the New Jersey Constitution, "the validity of a consent to a search, even in a non-custodial

situation, must be measured in terms of waiver"; that is, "where the State seeks to justify a search on the basis of consent it has the burden of showing that the consent was voluntary, an essential element of which is knowledge of the right to refuse consent." *State v. Johnson*, 346 A.2d 66, 68 (N.J. 1975); *see also State v. Williams*, 218 A.3d 356, 364 (N.J. Super. Ct. App. Div. 2019) ("It is well-established in New Jersey case law that officers seeking to search a residence by consent must inform the occupant that he or she has a right to refuse the search."). However, in a non-custodial situation, such as a traffic stop,[8] "the police would not necessarily be required to advise the person of his right to refuse to consent to the search," but "if the State seeks to rely on consent as the basis for a search, it has the burden of demonstrating knowledge on the part of the person involved that he had a choice in the matter." *Johnson*, 346 A.2d at 68.

In sum, for purposes of Plaintiff's § 1983 malicious prosecution claim, Menosky did not need probable cause to search the pill bottle because Plaintiff provided his consent to that search under the Fourth Amendment.[9] However, at this preliminary juncture, the Court cannot find under the New Jersey Constitution that Defendants have met their burden to prove that Plaintiff had knowledge of his right to refuse or had "a choice in the matter" when Menosky asked him to search the pill bottle. *Id*. In other words, Menosky was not permitted to search the pill bottle without probable cause under New Jersey law unless Defendants demonstrate that Plaintiff's consent was "voluntary," which they have not done on this bare record.

---

[8] *State v. Hickman*, 763 A.2d 330, 335 (N.J. Super. Ct. App. Div. 2000) ("The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." (internal quotation marks omitted)).

[9] Under the Fourth Amendment only, the State appears to have validly pursued the charges arising from Plaintiff's possession of marijuana (N.J. Stat. Ann. § 39:4-49.1, N.J. Stat. Ann. § 2C:35-10a(4), and N.J. Stat. Ann. § 2C:35-10b) because Plaintiff consented to the search of the pill bottles in his vehicle containing marijuana. Yet, without any argument from Defendants as to probable cause for the specific charges pursued against Plaintiff, the Court declines to make a finding as to the validity of any charge until such time as those issues are directly before the Court.

Finally, Menosky conducted a field sobriety test on Plaintiff. (SAC ¶ 16.) Menosky performed the horizontal gaze nystagmus test, the vertical gaze nystagmus test, the lack of convergence test, the modified Romberg balance test, the walk and turn test, and the one leg stand test on Plaintiff. (Feb. 13, 2017 Tr. at 49:18–57:6; *see also* Menosky Report 81–82.) Menosky determined from the field sobriety test that Plaintiff had been under the influence of a controlled substance, finding that during the horizontal nystagmus test Plaintiff "sway[ed] from front to back and side to side"; his right eye converged when Menosky moved his stimulus pen toward the bridge of Plaintiff's nose but his left eye did not; Plaintiff estimated the passage of thirty seconds in 37 seconds; Plaintiff had a greenish brown coating on his tongue; and Plaintiff had difficulty maintaining his balance during the one leg stand. (Menosky Report at 81–82; *see also* Feb. 13, 2017 Tr. 49:18–69:16.)

Plaintiff alleges that he passed the field sobriety test "to any reasonable person" and that, as Menosky conceded, "his observations of [Plaintiff] during the field sobriety test were consistent with being tired." (SAC ¶¶ 16, 25.) Plaintiff further alleges he "successfully completed" the "9-step" part of the field sobriety test, and, although Menosky testified that he failed the "one leg stand," a bright set of oncoming headlights distracted Plaintiff during the test and he had a pre-existing knee injury on the leg on which he was standing. (*Id*. ¶ 26.) According to Plaintiff, he asked to do the one leg stand again on his uninjured leg and Menosky refused. (*Id*.) Sasso then arrested Plaintiff for driving while intoxicated and possession of marijuana. (Sasso Report at 78.)

Viewing these allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has adequately pled lack of probable cause as to at least his driving-while-impaired charge (N.J. Stat. Ann. § 39:4-50). A person is guilty of driving while impaired if he or she "operates a motor vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-

producing drug." N.J. Stat. Ann. § 39:4-50(a). The New Jersey Supreme Court has ascribed the following definitions to the term "under the influence": (1) "a substantial deterioration or diminution of the mental faculties or physical capabilities of a person whether it be due to intoxicating liquor, narcotic, hallucinogenic or habit producing drugs"; "a condition which so affects the judgment or control of a motor vehicle operator as to make it improper for him to drive on the highway"; and "[i]n the specific context of narcotic, hallucinogenic or habit-producing drug intoxication, we have held that a driver is "under the influence of a narcotic drug . . . if the drug produced a narcotic effect 'so altering his or her normal physical coordination and mental faculties as to render such person a danger to himself as well as to other persons on the highway." *State v. Bealor*, 902 A.2d 226, 235 (N.J. 2006) (cleaned up).

Based on the elements of this charge, the Court finds that Plaintiff has adequately challenged, at this early stage, that Defendants had probable cause to arrest him for driving while impaired. As this Court has already determined, Plaintiff has alleged sufficient facts to dispute the allegation that Menosky and Sasso smelled burnt marijuana early on in his traffic stop which alone would have permitted them to search his vehicle. Furthermore, Plaintiff alleges facts to dispute that the totality of the remaining circumstances of his arrest would cause a reasonable person to believe that he was driving while under the influence of marijuana. Indeed, he pleads that when Sasso and Menosky first approached him, they asked him if he was drinking, not smoking marijuana (SAC ¶ 13); Menosky conceded that his observations of Plaintiff during his field sobriety test were consistent with being tired (Feb. 13, 2017 Tr. 66:10–24; *see also id*. ¶ 25); Plaintiff passed the field sobriety test "to any reasonable person" (SAC ¶ 16); Plaintiff "successfully completed" the "9-step" part of the field sobriety test (*id*. ¶ 26.); although Menosky testified that Plaintiff failed the "one leg stand," Plaintiff alleged that a bright set of oncoming

headlights distracted Plaintiff during the test and he had a pre-existing knee injury on the leg on which he was standing (*id.*); and Plaintiff asked to do the one leg stand again on his uninjured leg to which Menosky refused (*id.*). Moreover, under New Jersey law, Defendants have failed to demonstrate that the consent-to-search exception to probable cause applied to their search of Plaintiff's pill bottles. As Plaintiff alleges, the pill bottles still had their labels and there was nothing otherwise suspicious about them. (*Id.* ¶ 14.) Even though Menosky and Sasso were permitted to search the pill bottles without probable cause under the Fourth Amendment because Menosky obtained Plaintiff's consent, the Court finds that Plaintiff's possession of marijuana alone while driving was not legally sufficient to cause a reasonable person to believe that he was driving while under the influence of marijuana. Accordingly, because the SAC raises various fact issues regarding Menosky and Sasso's probable cause to arrest Plaintiff for driving while intoxicated, the Court cannot determine, at this stage, that probable cause existed for this charge. *See Evans v. City of Newark*, No. 14-00120, 2023 WL 2535283, at *18 (D.N.J. Mar. 16, 2023) (concluding that fact issues precluded a finding on probable cause).

### 2. Malice

Defendants also argue that Plaintiff has failed to plausibly plead the malice element of malicious prosecution. (Defs. Supp. Br. at 19–20.) They argue that Plaintiff has not alleged that Menosky or Sasso "knowingly lied, fabricated evidence, or acted with retaliatory or improper motives" when they allegedly gave different accounts on what was said on the muted MVR. (*Id.* at 19.) In addition, Defendants contend that Plaintiff has not pled facts to show that Mioduszewski's refusal to allow dismissal of the charges against Plaintiff when allegedly discussing the case *ex parte* with the municipal prosecutor was "based on personal animus, retaliation, or improper motive" toward Plaintiff. (*Id.* at 20.)

To prove malicious prosecution, Plaintiff must demonstrate that the defendants "acted maliciously or for a purpose other than bringing the plaintiff to justice." *Marasco*, 318 F.3d at 521. Plaintiff raises a question as to whether malice is "even a required element of malicious prosecution as a constitutional tort." (Pl. Supp. Opp. at 19.)[10] Plaintiff, however, acknowledges the Third Circuit's decision in *Pritchett v. Warrender* and its holding that malice is an element of malicious prosecution in this Circuit. 546 F. App'x 66, 68 (3d Cir. 2013). In that case, the Circuit was unpersuaded by the Sixth Circuit's opinion in *Sykes v. Anderson*, 625 F.3d 294, 309–10 (6th Cir. 2010), which reasoned that malice was not an element of a § 1983 malicious prosecution claim. This Court will follow *Pritchett* and other Third Circuit case law, *Marasco*, 318 F.3d at 521, which recognizes malice as an element of malicious prosecution.

"Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Morales v. Busbee*, 972 F. Supp. 254, 261 (D.N.J. 1997); *Evans v. City of Newark*, No. 14-00120, 2023 WL 2535283, at *18 (D.N.J. Mar. 16, 2023) ("In the context of a malicious prosecution claim, malice is a term of art, which includes "lack of belief by the actor himself in the propriety of the prosecution."). The element of malice, however, may be inferred from lack of probable cause. *Morales*, 972 F. Supp. at 261; *Evans*, 2023 WL 2535283, at *18 (same); *see also Kelley v. Reyes*, No. 19-17911, 2025 WL 618207, at *12 (D.N.J. Feb. 26, 2025) (same); *Khetani v. Plainsboro Twp.*, No. 23-534, 2024 WL 3861043, at *3 (D.N.J. Aug. 19, 2024); *Earl v. Winne*, 101 A.2d 535, 543 (N.J. 1953) ("The essence of an action for malicious prosecution is that the proceeding was instituted without probable cause, that the complainant was actuated by

---

[10] Plaintiff points to Justice Gorsuch's dissent in *Chiaverini*, which questions whether malicious prosecution is based in the Fourth Amendment or whether the Fourteenth Amendment is a better "constitutional hook." 602 U.S. at 570 (Gorsuch, J. dissenting). Justice Gorsuch's dissent does constitute controlling law.

a malicious motive in making the charge. Malice may be inferred, however, from a lack of probable cause. (citations omitted)). "As a result, fact issues precluding a finding on probable cause will generally also preclude a finding on malice." *Evans*, 2023 WL 2535283, at *18 (quoting *Sanders v. Jersey City*, No. 18-01057, 2021 WL 1589464 at *21 (D.N.J. Apr. 23, 2021)).

Here, because Plaintiff has plausibly pled a lack of probable cause to charge Plaintiff with driving while impaired, the Court will also infer, at this stage, that Plaintiff has plausibly pled malice. Furthermore, because Plaintiff essentially alleges that Sasso and Menosky fabricated that they smelled burnt marijuana (*see* SAC ¶ 13), the Court finds that this claim sufficiently supports the inference that Menosky and Sasso did not believe in the propriety of the prosecution. *See Evans*, 2023 WL 2535283, at *19 (finding that "because a reasonable jury could find that the officers knew that [plaintiff's] confession was fabricated, a jury could infer that the officers did not believe in the propriety of the prosecution"). Thus, at this stage, Plaintiff has adequately pled the malice element of malicious prosecution, and Defendants' Motion to Dismiss Plaintiff's § 1983 malicious prosecution claim (Count One) against Menosky and Sasso is denied.

### 3. Mioduszewski

While Plaintiff has adequately pled lack of probable cause and malice against Menosky and Sasso, the Court finds that they have failed to do so as to Mioduszewski. "Although it is well-settled that supervisors are not liable under § 1983 solely on a theory of *respondeat superior*, [their] personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Hughes v. Balicki*, No. 07-4554, 2008 WL 2835257, at *3 (D.N.J. July 18, 2008) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *see also Massaro v. Balicki*, No. 13-6958, 2016 WL 4204547, at *4 (D.N.J. Aug. 8, 2016) ("[A] supervisor may not be personally liable absent any personal involvement or actual knowledge.")

Plaintiff alleges that Mioduszewski, Holmdel's police chief, spoke to the judge *ex parte* before Plaintiff's second municipal trial and, as a result, the municipal prosecutor could not otherwise resolve the case absent a trial. (SAC ¶ 32.) Apart from a conclusory allegation that Mioduszewski "knew or should have known" that there was no probable cause to prosecute Plaintiff (*id.* ¶ 2), Plaintiff pleads no facts to support that Menosky and Sasso's actions during Plaintiff's traffic stop were at Mioduszewski's personal direction or with his actual knowledge or acquiescence, including that Menosky and Sasso allegedly fabricated that they smelled burnt marijuana. Furthermore, Mioduszewski's alleged conversation with the municipal court judge, without more, shows only that he sought for the case to proceed to trial. There is also no allegation that Mioduszewski attempted to influence the judge as to any trial disposition. The circumstances of that conversation, as pled, do not otherwise allow this Court to infer that Mioduszewski actually knew that there was no probable cause for Plaintiff's prosecution. Thus, Defendants' Motion to Dismiss Plaintiff's § 1983 malicious prosecution claim (Count One) against Mioduszewski is granted.

### B.  *Monell* Claim

The Court held in its initial Motion to Dismiss Opinion that Plaintiff's *Monell* claim failed for two reasons: (1) Plaintiff's failure to allege a Fourth Amendment seizure in pursuit of his malicious prosecution claim meant there was no constitutional violation under which his *Monell* claim could proceed, (2) alternatively, assuming that Plaintiff had alleged an underlying constitutional violation, Plaintiff failed to plausibly plead a *Monell* claim under a failure to train or failure to supervise theory. *Elfar I*, 2024 WL 415691, at *13. The Third Circuit vacated the Court's first basis for dismissing the *Monell* claim and tasked the Court on remand with deciding whether Plaintiff's malicious prosecution claim could serve as the underlying constitutional

violation for his *Monell* claim. *See Elfar II*, 2025 WL 671112, at *5 ("Rather than reach these issues, we will remand for the court to consider . . . whether malicious prosecution might serve as the basis for his municipal liability claim.").

The Court has determined, for the reasons stated above, that Plaintiff's malicious prosecution claim is adequately pled and can, therefore, serve as the underlying constitutional basis for Plaintiff's *Monell* claim. The parties' supplemental briefing fails to adequately address the plausibility of the *Monell* claim in this context. Defendants argue solely that because Plaintiff has failed to plead a malicious prosecution claim and, therefore, an underlying constitutional violation, Plaintiff cannot pursue a *Monell* claim under § 1983. (Defs. Supp. Br. at 24–25.) Defendants raise no other grounds for dismissal in their supplement. For Plaintiff's part, he simply reiterates many of the same arguments raised in his initial opposition. (Pl. Supp. Opp. at 22–25.) Without more argument from either party, the Court declines to undertake, at this stage, an assessment of the *Monell* claim's potential deficiencies in light of Plaintiff's adequately pled malicious prosecution claim. Thus, the Court allows the *Monell* claim to proceed to discovery. The parties will have an opportunity to fully brief such issues come summary judgment.

### C.  COMMON LAW MALICIOUS PROSECUTION

Lack of probable cause and malice are both elements of a common law malicious prosecution claim. *LoBiondo v. Schwartz*, 970 A.2d 1007, 1022 (N.J. 2009) ("Malicious prosecution requires the plaintiff to prove four elements: (1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff.") Therefore, for the same reasons discussed above, the Court finds that Plaintiff has

adequately pled those elements of common law malicious prosecution (Count Three) against Menosky and Sasso.

In Defendants' original Motion to Dismiss briefing, they make passing mention of immunity under the under the New Jersey Tort Claims Act ("NJTCA"), arguing that the NJTCA provides immunity to public employees for instituting or prosecuting a judicial or administrative proceeding. (ECF No. 66-4 at 53.) As a result, they contend that Menosky and Sasso are shielded from Plaintiff's common law malicious prosecution claim. *Id.* The NJTCA provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment." N.J. Stat. Ann. § 59:3-8. However, the NJTCA provides the following exception to immunity: "[n]othing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or wilful misconduct." N.J. Stat. Ann. § 59:3-14(a). "Immunity [under the NJTCA] is an affirmative defense, and the party asserting immunity carries both the burden of production and persuasion." *Stewart v. New Jersey Tpk. Auth./Garden State Parkway*, 268 A.3d 346, 354 (N.J. 2022). Because this Court has already determined that Plaintiff adequately pled actual malice for purposes of his malicious prosecution claims, the Court likewise finds that Defendants have failed to meet their burden to prove that Menosky and Sasso are immune from suit under the NJTCA. Defendants' Motion to Dismiss Plaintiff's common law malicious prosecution claim (Count Three) against Menosky and Sasso is denied.[11]

---

[11] For the same reasons that this Court dismissed Plaintiff's § 1983 malicious prosecution claim against Mioduszewski, the Court also dismisses Plaintiff's common law malicious prosecution claim against him.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**. An appropriate Order will follow.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: August 29, 2025